Chester Municipal Authority, Appellant, *v.* Delp.

Argued May 27, 1952.   Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Clement J. McGovern,* with him *William J. Scarlett* and *J. H. Ward Hinkson,* for appellant.

*J. Paul MacElree,* with him *Lawrence E. MacElree,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, November 18, 1952:

Appellant, Chester Municipal Authority, instituted an eminent domain proceeding. The Authority is the owner of a water system in Chester and vicinity. It desired to construct an underground water pipe-line. By resolution on April 6, 1950 the Authority acquired and appropriated ". . . such rights of way or easements

on and under the lands hereinafter described as are necessary to construct, operate and maintain said water pipe-line and its accessories, in the said locations and routes along, about, and under the line shown as the center line of said rights of way or easements on the said blueprint plans by Francis S. Friel, engineer, together with rights of entry thereto, along, about and upon said line, for construction, maintenance or renewal thereof." Apparently, the Authority started work on appellant's land on June 3, 1950 and completed the work about July 31, 1950.

On September 11, 1950 a jury of view was appointed which viewed the premises on October 10, 1950. On January 4, 1951 the Authority passed the following supplemental resolution: "WHEREAS, the Authority desires hereby to define and limit the extent and character of the rights of way acquired under and by virtue of the said Right of Way Resolutions: NOW, THEREFORE, it is hereby resolved by the Board of Chester Municipal Authority—1. That all rights of way or easements heretofore appropriated by the Authority for the construction, operation, maintenance and ultimate renewal of its underground water transmission pipe-line are expressly defined and limited as follows: (a) To the permanent occupation and use of such area underground as shall be required for the installation, construction, joinder, anchorage and support of a single line of prestressed steel and concrete water-main pipe, of diameters varying from 48 inches to 30 inches, as well as for the accommodation of access manholes, valves, boxes, conduits and other accessories—all as shown for each individual property upon the blue-print plan attached to the bond tendered to the owner of such property in the condemnation proceedings instituted following the adoption of the aforementioned Right of Way Resolutions; and (b) To the

permanent occupation and use of such surface area as shall be required for the said manholes, valves, boxes and other accessories, including markers; and (c) To the temporary occupation and use of such surface area as shall be reasonably required in and about the original construction of the said pipe-line—said area, however, not to exceed 20 feet in width to either side of the center of said pipe-line, to be entered upon and reached only along the line of the said pipe-line right of way and not across other lands of the owners; and (d) To the temporary occupation and use of such surface area as shall at any time or times in the future be reasonably required for the operation, maintenance or renewal of said pipe-line and/or accessories—said area, however, not to exceed 10 feet in width to either side of the center of said pipe-line, to be entered upon and reached only along the line of the said pipe-line right of way—the Authority to be and remain responsible for any and all damage to buildings, fences, crops, trees, or other property occasioned by reason of any such future occupation and use, if and when such damage be sustained. 2. That this resolution constitutes a supplement to the aforementioned Right of Way Resolutions of April 6, 1950, and May 4, 1950, respectively; and the terms and provisions hereof are intended to limit the rights of the Authority acquired thereunder and to define the responsibility of the Authority in connection with the exercise of such rights. 3. That all resolutions, motions, or parts thereof, that may be inconsistent herewith are hereby repealed. 4. That the effective date hereof shall, as to each property involved, be the date of its original appropriation by Resolution of this Board."

In May, 1951, the viewers met and awarded $5,-920.96. The appellant took exceptions to the report of the viewers and also filed an appeal to the common

pleas court. The appeal to this Court is from the dismissal of exceptions.

Any defect or irregularity in the viewers' report or in the proceeding before the viewers is to be raised upon exceptions, for a question of law is then involved: See *Urban Redevelopment Authority of Pittsburgh Appeal*, 370 Pa. 243, 87 A. 2d 787; *Lower Chichester Twp. v. Roberts et al.*, 308 Pa. 195, 162 A. 460. In the latter case the question was whether certain expenses of the township in building a sewer in front of a property were properly items to be charged against the property owner in making an assessment for benefits, and this Court said such questions must be raised upon exceptions. However, it is not all questions of law which will be decided upon exceptions. The rule was well stated in *Allentown's Appeal*, 121 Pa. Superior Ct. 352, 183 A. 360, as follows: (p. 356) "Speaking generally, it may be said, upon the authority of Lower Chichester Township v. Roberts et al., 308 Pa. 195, 162 A. 460, that questions of procedure and other questions of law which should be disposed of preliminarily by a court are properly raised by exceptions, but such issues of fact as the proximate cause of injuries and their extent are for a jury. When questions of fact which should go to a jury are attempted to be raised by exceptions, the court may properly relegate them to the triers of fact for disposition at the trial upon the appeal." See *Urban Redevelopment Authority of Pittsburgh Appeal*, supra.

Turning to the supplemental resolution, it is clear that such resolution merely defined the taking. The original resolution took the ". . . rights of way or easements on and under the lands hereinafter described *as are necessary* to construct, operate and maintain said water pipe-line. . .". (Emphasis supplied). The resolution of January 4, 1951 merely defined the

amount necessary. In *Pittsburgh Forge & Iron Co. v. Allegheny County*, 308 Pa. 328, 162 A. 832, Allegheny County, desiring to construct a bridge over the Ohio River, adopted a condemning resolution. After entry on the land, the county commissioners adopted another resolution ". . . more particularly defining the property taken, or intended by the original resolution to be taken, . . .". This supplemental resolution was offered in evidence at the trial of the appeal to the common pleas and its admissibility approved by this Court. See also *Philadelphia Felt Co.'s Appeal*, 293 Pa. 551, 143 A. 208; *M. J. Wilson v. City of Scranton*, 141 Pa. 621, 21 A. 779. Since the supplemental resolution did not reduce the taking but merely defined it, it was therefore admissible into evidence.

There remains the question as to what should be a proper order in this case. Since the supplemental resolution may be introduced on appeal to the common pleas and since the viewers' report is not before the jury, it is unnecessary to refer the case back to the viewers. We therefore affirm the order dismissing appellant's exceptions with the right to appellant to introduce the supplemental resolution at the trial on the appeal.

Order affirmed. Costs to be paid by appellant.