Bern Township Authority, Appellant *v.* Edward G. Hartman and John W. Hartman, Appellees.

Bern Township Authority, Appellant *v.* Edward G. Hartman and John W. Hartman, Appellees.

Bern Township Authority, Appellant *v.* Edward G. Hartman and John W. Hartman, Appellees.

Edward G. Hartman and John W. Hartman, Appellants *v.* Bern Township Authority, Appellee.

Edward G. Hartman and John W. Hartman, Appellants *v.* Bern Township Authority, Appellee.

Edward G. Hartman and John W. Hartman, Appellants *v.* Bern Township Authority, Appellee.

Argued March 5, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three. Reargued September 14, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*Brett A. Huckabee, DeSantis, Huckabee, Weiler & Schmehl,* for Bern Township Authority.

*Calvin E. Smith,* with him *Kurt H. Decker, Stevens & Lee,* for Edward G. Hartman and John W. Hartman.

*William H. Markus,* with him *Edmond B. Smith, Jr., Markus, Riethmuller & Smith,* for Amicus Curiae, Pennsylvania Municipal Authorities Association.

OPINION BY JUDGE CRAIG, October 22, 1982:

This case has been reargued before the court en banc because it poses these two important questions:

1. When a municipality authority proceeds to recover the cost of a project by a combination of front-foot assessments and benefit assessments, is a total recovery in excess of the project's assessable construction costs permitted under the law?

2. If the authority's total recovery cannot exceed the assessable construction costs, may property owners challenge the benefits award of a board of viewers, on that substantive ground, by affidavit of defense to a scire facias sur municipal claim, or are there other remedies which must be pursued?

Resolution of these questions may have far-reaching significance because, as pointed out by counsel for amicus curiae,[1] Pennsylvania has more than 2300 active municipality authorities, with over $7 billion dollars of outstanding bonds, operating in 66 of our counties, to provide sewer service to six million citizens and water service to 3.3 million.

## The Case History

Bern Township Authority[2] along with Edward G. Hartman and John W. Hartman (landowners)[3] have appealed the opinion, order and judgment[4] of the

[1] Because of our felt need for experienced guidance in this matter, the reargument order by President Judge CRUMLISH invited amicus curiae participation by organizations having interest and experience in the field. We received the benefit of a thorough brief and also oral participation, specially allowed, on behalf of the Pennsylvania Municipal Authorities Association, by its counsel, William H. Markus, Esquire.

[2] Appellant in cases 254 C.D. 1981, 861 C.D. 1981 and 1736 C.D. 1981.

[3] Appellants in cases 393 C.D. 1981, 1011 C.D. 1981 and 1795 C.D. 1981.

[4] Judge BERTOLET of the common pleas court filed the opinion on January 22, 1981 and the order on April 10, 1981. The Authority caused judgment to be entered on the order on July 15, 1981. The respective parties appealed at all three junctures.

Court of Common Pleas of Berks County in an action of scire facias sur municipal claim for water main improvements. The court vacated a jury verdict in favor of the landowners, denied the Authority's motion for new trial or judgment n.o.v., and permitted the landowners to proceed to trial on a nunc pro tunc appeal from the board of view's benefit assessment determination.

In 1973, after installing a water distribution system in Bern Township, the Authority used a *combined* approach of assessing charges for the cost of the system. The Authority levied a "foot front" charge[5] against the majority of property owners, then filed a petition for the appointment of viewers to determine the benefit assessments against four remaining property owners, including the landowners.[6]

In its report assessing the landowners $35,000 for the benefit to their property, the board assumed that the Authority proceeded properly in its front-foot assessments, noting the limitation in Section 4(B) of the Municipality Act[7] that "there shall not be charged against the properties benefited, improved or accommodated ... an aggregate amount in excess of the estimated cost as approved by the municipality." The viewers stated that any party assessed would have the right to "petition the Court to adjust all of the assess-

---

[5] Assessments based upon the foot front method are authorized under Section 4B(s) of the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §306(B)(s).

The assessment here, at $7.25 a foot, had raised $204,055.07 at the time of the board of view proceeding.

[6] Assessments based upon the benefit method are authorized by Section 4B(r) of the Act, 53 P.S. §306(B)(r). The four property owners were Edward and John W. Hartman, Pierce and Katie Hettinger, Wayne and Jay Field, and Epler's United Church of Christ.

[7] See n. 5.

ments proportionately'' should the aggregate assessments total in excess of the "estimated cost.''

Both the Authority and the landowners filed "exceptions,'' "objections'' and "appeals'' from the viewer's report, the landowners contending, among other things, that the aggregate assessments exceeded the lawful maximum. The common pleas judge, in referring the matter back to the viewers, overruled that objection.[8]

On April 19, 1976, the viewers filed another report affirming the earlier assessment. *No party appealed from the court's subsequent confirmation of the award.*

When the Authority filed for a writ of scire facias sur municipal claim against the landowner's property, the landowners once again raised the argument that the aggregate assessment exceeded the "assessable costs of the project'' in their affidavit of defense, along with other allegations.[9]

---

[8] The judge stated:

The first point raised by the Hartmans is that since the total of all foot-front and benefit assessments is considerably more than the assessable cost of the project, the Authority can either only collect so much of its costs as have not otherwise been paid or should be required to submit a pro-rata plan for the project giving either credits or refunds to all properties assessed. We are of the opinion that while the Authority may not be permitted to make a profit on the construction of the project, a report of the Board of Viewers is not the occasion to reduce foot-front or benefit assessments. Going further, we are of the opinion that the consideration of the cost of the project is not a function of or within the purview of the Viewers.

[9] The landowners claimed as defenses to the writ that the improvement was unnecessary, that their land was rural in nature (and thus presumably exempt from assessments for municipal projects), that the deed description used by the Authority was erroneous, and that the Authority failed to define the geographic limitiations of the water district.

At a jury trial on the writ,[10] the judge instructed the jury that the sole issues for disposition were: (1) Is the project over-assessed? (2) If so, should the benefits to the defendants be re-evaluated? The jury answered both questions in the affirmative.

Following the Authority's motion for new trial or for judgment n.o.v., the judge filed an opinion in which he concluded:

> [W]e are of the opinion that an assessment or charge on the benefit method is not limited by or concerned with the amount of the assessments against the properties affected by the project, either individually or in toto, except the specific property in suit, in this case the property of the Defendants. The trial judge (the present writer) therefore erred in submitting the questions to the jury as was done and in admitting testimony in relation to them.
>
> . . . .
>
> [T]herefore . . . the jury's verdict, i.e., their answers to the questions propounded to them, must be set aside, and . . . Defendants are entitled to a trial on the issue of the specific dollar amount of the benefit to the Defendants' property in the eminent domain type proceeding.

With the foregoing history of the case in mind, we now must consider the two questions first stated above.

### Limitation on Authority's Recovery

We recognize the legislative wisdom of having more than one method to recover improvement costs through assessments. As underscored by counsel for

[10] Before the trial, the Authority had filed a petition and rule for judgment for want of a sufficient affidavit of defense; the common pleas court judge struck all of the landowners' allegations except those as to the excessive aggregate assessments.

amicus curiae, the front-foot assessment method provides a simple mathematical approach which is particularly suitable where the terrain is level and individual properties tend to be regular in shape and somewhat uniform in depth so that their relationships in highway frontage and area are proportionate. However, the routine utility of the front-foot approach may not be suitable in special situations in level country and may also be ill-adapted to some locations in the hilly or mountainous western, north central and northeastern portions of the state, where irregularly shaped properties and winding roads are more common.

Accordingly, the Pennsylvania Supreme Court, in *Whitemarsh Township v. Elwert,* 413 Pa. 329, 196 A.2d 843 (1964) clearly approved the optional use of a combination of front-foot and benefits assessments, like that which the Bern Township Authority employed here.

In *Stockdale Borough v. Astle,* 410 Pa. 257, 189 A.2d 152 (1963), the Supreme Court made it clear, in a case involving front-foot assessment method alone, that public agencies collecting for improvements will be strictly held to the statutory recovery limits; that decision also established that the maximum public agency recovery is limited to net cost, requiring county and state grants to be deducted before determining the project cost to which the recovery limit must be applied.[11]

In interpreting the analogous statute there involved, the Supreme Court sharply frowned upon the prospect of a political subdivision reaping a profit in the assessment process. Therefore, in the light of *Stockdale,* we are convinced that the Act here demands

---

[11] In accord is our decision in *Borough of Northampton v. Knauss,* 27 Pa. Commonwealth Ct. 543, 367 A.2d 358 (1976).

a substantive interpretation prohibiting an assessment profit when a combination of assessment methods are used.

Sections 4(b)(r) and (s) of the Act,[12] which grant each municipal authority the power *"to charge the cost of construction* of any sewer or water main'' (emphasis supplied) by either the benefit or front-foot method, clearly limit the total assessments to an amount no more than that introductory phrase authorizes. The proviso prohibiting assessments in excess of estimated costs at the end of subsection (s) is therefore merely redundant as to that point, and does not indicate that the aggregate cost limitation is inapplicable when an Authority utilizes only the benefit method of assessments, under subsection (r).

More difficult to answer is the question of remedy —how may property owners effectively obtain relief against assessments which threaten, in the aggregate, to exceed total assessable costs? Inextricably involved with that problem is the question of how the combination assessment process should be structured to enable an authority to avoid excessive recovery, as well as to provide property owners with the elements necessary to make the remedy effective.

## The Proper Remedy

Recognizing that our law normally affords a feasible remedy for every measurable wrong, we must conclude that the proper remedy is not at the point of the collection process, as presented here, provided that we can discern that there are proper remedies available to bar overassessment in the course of the assessment process.

Here the landowners, having raised the issue of the excessive aggregate amount of authority recovery by

---

[12] *See* notes 5 and 6.

means of exceptions from the viewers' report, nevertheless did not pursue that available remedy because they did not appeal from the common pleas court's ultimate confirmation of the award of benefits.

Unfortunately, we cannot approve the subsequent collection proceeding, the scire facias sur municipal claim process, as the vehicle to provide the remedy for property owners. In *Chester Municipal Authority v. Delp,* 371 Pa. 600, 604, 92 A.2d 169, 170 (1952) the Supreme Court made clear the basic scope of viewers' proceedings, stating:

> Any defect or irregularity in the viewers' report or in the proceeding before the viewers is to be raised upon exceptions, for a question of law is then involved. . . .

In *Chester Municipal Authority,* the court cited *Lower Chichester Township v. Roberts,* 308 Pa. 195, 162 A. 460 (1932). In the sci fa proceeding, the original judgment cannot be collaterally attacked on an issue which could have been raised in the original action. 7 Standard Pa. Practice 355-56, §95. The Superior Court had followed that rule in *City of Corry v. Corry Chair Co.,* 18 Pa. Superior Ct. 271, A. (1901) specifically as to benefits assessments, and we agreed in *Fox Chapel Sanitary Authority v. Abbott,* 34 Pa. Commonwealth Ct. 637, 384 A.2d 1012 (1978).

Although complete mathematical precision can never be attained, the above-stated statutory limitation on the power of the Authority, limiting that power to making charges to recover only the cost of construction, imposes an obligation upon authorities to structure their approach carefully, particularly when a combination of the front-foot method and the benefit method is used.

With respect to the procedure and remedies for assessments, both by benefits and by front-foot method, the Act makes cross-references to the law govern-

ing the procedure for assessment according to the municipality in which the Authority is functioning.[13] Here, with a second class township involved, we turn to The Second Class Township Code.[14] That Code recognizes and specifies the front-foot assessment method for sewer facilities in Section 1509(a)[15] and in Section 1610(a)[16] for water facilities. Subsection (b) in each of those sections respectively recognizes the benefits assessment method. The procedural sections of that Code, Section 1510[17] for sewers and Section 1611[18] for water facilities, in like terms provide for the appointment of viewers to assess benefits. Significantly, under both of those latter two sections, township taxpayers, within three months of the adoption of a resolution or ordinance levying a front-foot assessment, may petition the court of common pleas for the appointment of viewers where they believe that the front-foot assessment proposal insufficiently represents the actual benefits. That provision hence appears to contemplate that the front-foot assessment approach is in essence a convenient surrogate for the assessment of benefits. The scheme of the Code, applied to municipal authorites by the Act, thus requires that the assessment resolution of an authority, in a combination approach, should be drawn with the entire recovery in mind, articulating both the front-foot assessment program and the benefits assessment program, the properties involved in each and indicating the source of estimated costs to be recovered.

Just as a taxpayer may, under the Code, raise before the viewers a question as to the inadequacy of the

---

13 Subsections 4B(r) and (s) of the Act, 53 P.S. §306B(r) (s).

14 Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101-67-201.

15 53 P.S. §66509(a).

16 53 P.S. §66610(a).

17 53 P.S. §66510.

18 53 P.S. §66611.

proposed recovery of costs, in like manner the viewers' proceedings, and exceptions and appeals from it, are available to embrace for the assessed property owners the entire issue of prospective excessive recovery by the public agency.

Judicial scrutiny as to the precise implementation of the municipal program and the property owner's remedy is not possible here, but must await further study in a case where the issue has been timely presented in the proper proceeding rather than in the collection proceeding. Nevertheless, as exemplified in this case, the importance of the authority clearly specifying all of the factors, assessment approaches and estimates in its assessment resolution and other public actions cannot be overemphasized.

Our final conclusion, therefore, must be to reverse the decision of the common pleas court and remand this case with a direction to enter judgment n.o.v. in favor of the Authority.

ORDER IN 254 C.D. 1981

Now, October 22, 1982, the order of the Court of Common Pleas of Berks County, dated January 22, 1981, No. 8 October 1977, is reversed, and the case is remanded for entry of judgment n.o.v. in favor of Bern Township Authority.

ORDER IN 861 C.D. 1981

Now, October 22, 1982, the order of the Court of Common Pleas of Berks County, dated January 22, 1981, No. 8 October 1977, is reversed, and the case is remanded for entry of judgment n.o.v. in favor of Bern Township Authority.

ORDER IN 1736 C.D. 1981

Now, October 22, 1982, the order of the Court of Common Pleas of Berks County, dated January 22,

1981, No. 8 October 1977, is reversed, and the case is remanded for entry of judgment n.o.v. in favor of Bern Township Authority.

ORDER IN 393 C.D. 1981

Now, October 22, 1982, the order of the Court of Common Pleas of Berks County, dated January 22, 1981, No. 8 October 1977, is reversed, and the case is remanded for entry of judgment n.o.v. in favor of Bern Township Authority.

ORDER IN 1011 C.D. 1981

Now, October 22, 1982, the order of the Court of Common Pleas of Berks County, dated January 22, 1981, No. 8 October 1977, is reversed, and the case is remanded for entry of judgment n.o.v. in favor of Bern Township Authority.

ORDER IN 1795 C.D. 1981

Now, October 22, 1982, the order of the Court of Common Pleas of Berks County, dated January 22, 1981, No. 8 October 1977, is reversed, and the case is remanded for entry of judgment n.o.v. in favor of Bern Township Authority.