(726 P.2d 1354)

No. 58,701

JOHN J. MALLON and F. SOPHIA MALLON; STEPHEN M. KNECHT and ANN L. KNECHT; NORMAN W. POWERS and PHYLLIS A. POWERS; FREDERICH S. NEUER and PAUL F. NEUER; MARK I. ENSMAN; LESLIE B. ANDERSON and BETTY J. ANDERSON; ROY C. GALLUP, JR. and MARY J. GALLUP; CHESTER A. SPEARS and SYDNEY E. SPEARS, *Appellants/Cross-Appellees,* v. THE CITY OF EMPORIA, KANSAS, *Appellee/Cross-Appellant.*

—

Opinion filed October 30, 1986.

*Merlin G. Wheeler,* of Perkins, Hollembeak & Wheeler, Chartered, of Emporia, for the appellants/cross-appellees.

*Dale W. Bell,* of Guy, Helbert, Bell & Smith, Chartered, of Emporia, for the appellee/cross-appellant.

Before ABBOTT, C.J., REES and DAVIS, JJ.

ABBOTT, C.J.: This appeal arises out of sewer and street improvements in an improvement district within the City of Emporia.

The landowners appeal alleging the trial court erred in granting summary judgment to the City of Emporia, which had credited interest income from the investment proceeds of temporary notes to its general bond fund, and in holding the City was not arbitrary and capricious in assessing one-half the cost of an internal T-intersection to the landowners and increasing the percentage the landowner must pay in the final ordinance apportioning costs for the street between the City and the improvement district. The City cross-appeals alleging the court erred in granting summary judgment to the landowners on the question of whether interest payable with the first special assessment installment should be charged from the effective date of the ordinance or for an entire year.

The landowners in the Park Place Subdivision in the City of Emporia petitioned the governing body for street and sanitary sewer improvements under K.S.A. 12-6a04(2), of the General Improvement and Assessment Law of Kansas.

By separate resolution the sewer improvement cost was apportioned 100% to the improvement district and 0% to the City at large and the cost of the street improvement was apportioned 90% to the improvement district and 10% to the City at large. The total estimated cost of the improvements was $205,148.95 (sewer—$57,542.40 and street—$147,606.55).

Temporary notes in the amount of $205,000 were issued on September 1, 1982. The practice in Emporia at that time was to place the proceeds from temporary notes from *all* special improvement projects in a single "improvement fund" account. Idle funds in the improvement fund account were invested and interest earned. The interest income was not prorated among the individual improvement projects. When a project was completed, the City transferred any surplus in the improvement fund account to the "bond and interest fund" without segregating the monies to the respective improvement projects, thereby reducing the tax levy necessary to the City's general bond obligations.

The projects giving rise to this appeal were completed as contemplated in the spring of 1983. In July, an ordinance was enacted levying assessments on the property in the improvement

district. The landowners moved to set aside or modify the special assessments and the trial court granted summary judgment. This appeal follows.

### a. Investment Income.

The landowners contend that interest earned from the investment of idle temporary notes proceeds should have been credited to the specific improvement project's interest cost. They argue this practice results in the improvement district's not being apportioned its true cost of the improvement when assessments are made.

Pursuant to the General Improvement and Assessment Law, K.S.A. 12-6a01 *et seq.,* the governing body is authorized to levy special assessments against property in the improvement district based upon the cost of the improvement and the apportionment of that cost between the city at large and the improvement district. "Cost" is defined as "all costs necessarily incurred for the preparation of preliminary reports, the preparation of plans and specifications, the preparation and publication of notices of hearings, resolutions, ordinances and other proceedings, necessary fees and expenses of consultants and *interest accrued on borrowed money during the period of construction* together with the cost of land, materials, labor and other lawful expenses incurred in planning and doing any improvement . . ." K.S.A. 12-6a01(d).

The interest cost of the temporary notes is a "cost" within the meaning of the improvement and assessment law and is thus an item which may be assessed against the property owners in the improvement district. It is the landowners' position, however, that the interest cost accrued must be offset by the interest income from the investment of idle temporary note proceeds. In short, the cost is a "net cost" and not a gross cost. K.S.A. 12-6a01(d) provides no answer to the question before us. As noted in *Board of Education v. City of Topeka,* 214 Kan. 811, 522 P.2d 982 (1974), the general improvement and assessment law is intended to provide a complete alternative to other methods provided by law whereby the governing body of the City undertakes improvements. Thus, the Kansas decisions purporting to construe "cost" to mean "net cost" are not particularly enlightening, since the word "cost" was in the context of other statutes and proceedings. Our Supreme Court has noted the

inapplicability of other improvement laws when the proceedings were not brought under those statutes. See *Dodson v. City of Ulysses*, 219 Kan. 418, 426, 549 P.2d 430 (1976) (street improvements brought pursuant to the general paving law, K.S.A. 12-601 *et seq.*). *Dodson* prohibited using an unsubstantiated percentage estimate of construction cost to arrive at the cost of the improvement. Under the general paving statutes, cost of the improvement was interpreted to mean actual cost. And in *Bell v. City of Topeka*, 220 Kan. 405, 553 P.2d 331 (1976), "cost" as used in K.S.A. 13-10,115 does not include federal funds contributed by the government, but means the actual cost remaining to the City.

There is some support for the landowners' position that the interest earned on the temporary notes should have been deducted from the interest cost of the temporary notes before assessment. In 14 McQuillin, Municipal Corporations § 38.140 (3d ed. 1985 Supp.), it is stated that a municipality may not assess property owners for the total cost of an improvement without reduction for funds received from other services, such as county, state, or federal agencies. The foreign authorities cited by the landowners in their brief apply this principle. Although none of the cases involve investment income, by analogy, interest earned should also be applied to reduce the total cost of an improvement as "funds from other sources." See *Bern Twp. Auth. v. Hartman et al.*, 69 Pa. Commw. 420, 451 A.2d 567 (1982); *Boro. of Northampton v. Knauss et al.*, 27 Pa. Commw. 543, 367 A.2d 358 (1976).

Perhaps the most compelling argument in support of the landowners' position is the treatment of interest income as expressed in the General Bond Law. K.S.A. 10-101 *et seq.* K.S.A. 10-131 addresses the manner in which interest income from investment of idle bond proceeds is to be accounted for: "The interest received on any such investment shall upon receipt thereof be set aside and used for the purpose of paying interest on the bonds issued or, when bonds have been approved at an election held under the general bond law, placed in a fund to be used for paying the cost of the project for which the bonds were issued." Since the General Improvement and Assessment Law, Chapter 12, Article 6a, is silent on the interest issue, the provisions of the General Bond Law would govern. K.S.A. 10-125 states the general bond law is applicable to all issuances of municipal bonds

unless specific provisions otherwise exist and conflict with the General Bond Law. As plaintiffs correctly point out, temporary notes are encompassed within the meaning of bonds. See *First State Bank v. Bone,* 122 Kan. 493, 252 Pac. 250 (1927). Based upon this authority, we conclude that the temporary notes, issued under the authority of 12-6a14 of the General Improvement and Assessment Law, and in which idle funds are invested, are governed by K.S.A. 10-131. Thus, the interest income must be set off against the interest expense of the temporary notes applicable to the specific project in question rather than a reduction to the interest expense for all improvement projects lumped together.

The City's failure to do so was contrary to the provisions of K.S.A. 10-131 and therefore unlawful.

### b. T-Intersection

The City's written policy guidelines for constructing street improvements indicate that the cost of all intersections shall be borne by the City at large. Here, one-half of the cost of the cul-de-sac intersection was allocated to the City at large. The landowners contend that once the City adopted the written street improvement policy, it was bound to apply the cost allocation of intersections in accord with that policy. The landowners argue that failure to follow the policy constitutes an arbitrary assessment, and also argue an estoppel theory based upon the policy guidelines of the City.

The improvement project has one main subdivision road. It is a cul-de-sac, and it has a short cul-de-sac road running off of it. Thus, there are two T-intersections involved. The first intersection is located where the main subdivision road meets Lincoln Street. Lincoln Street was already in existence. The "stem" of the T ties into Lincoln Street. The expense involved is the cost of tying the main subdivision road into Lincoln Street. The second T-intersection is where the long cul-de-sac formed another T-intersection with the short cul-de-sac.

The landowners cite no cases that require the governing body to adhere to adopted policies when contravention of the policy is not in violation of the state statutes. K.S.A. 12-6a02 permits the governing body to assess all or any part of the cost of the improvement to the improvement district. And, pursuant to K.S.A. 12-6a07, the City at large may be allocated up to 95% of the cost of an improvement. "Policy guidelines" fall short of

being an enactment of law and are not the equivalent of a statute. K.S.A. 12-6a07 is superior to any improvement policy the City may adopt. See *Halford v. City of Topeka*, 234 Kan. 934, 677 P.2d 975 (1984).

The landowners have not demonstrated that the cost allocation is disproportionate to the benefit conferred by the improvement. The City takes the position that, because of the configuration of the roads involved, at least one-half of the T-intersection is a continuation of a roadway and, thus, by paying one-half the cost, the City is, in essence, paying the entire cost of the intersection. K.S.A. 12-6a02 only limits the governing body's allocation of costs in proportion to special benefits conferred. We are of the opinion the allocation of one-half of the cost of the T-intersection, under the facts of this case, is not arbitrary.

*Benson v. City of DeSoto*, 212 Kan. 415, 510 P.2d 1281 (1973), cited by the landowners in support of their estoppel argument, is not persuasive. In *Benson*, the City was estopped from asserting the *invalidity* of its own *ordinance* enacted to rezone the subject property. In this case, the City does not contend that its improvement policy is invalid; rather, that the City is not bound to follow that policy so long as the City's conduct or actual practices do not conflict with the applicable statutes. Finally, the landowners have not demonstrated that they relied on the City's improvement policy. At no time in the proceedings did the City represent the cost allocation of the intersection to be pursuant to its "policy." We do not find reversible error.

### c. Percentage Allocation of Costs

This issue raises the variance in the percentage allocation of costs made between the resolution, which authorized and ordered the street improvement project, and the assessment ordinance, which was enacted for the levy of special assessments against the affected property. The resolution apportioned the costs of the street improvement as 90% to the improvement district and 10% to the City at large, which is the apportionment of costs requested in the petition for the proposed street improvement.

When the project was completed, the City enacted an ordinance levying the special assessments and apportioned the actual cost of the paving project 91.4% to the improvement district

and 8.59% to the City at large. (Our computations indicate the percentage to be 91.57% and 8.43%.)

The landowners contend that the City was bound by the cost allocation percentages expressed in the resolution and could not change the percentages in the assessment ordinance. A subsequent change, they argue, is arbitrary and capricious action by the City. In support of their position, they refer to the language in K.S.A. 12-6a09(a) indicating that the assessment rolls, upon completion of the improvement project, are "to be determined in the manner set forth in the resolution . . . provided for in K.S.A. 12-6a04."

The City argues that the distinction between a resolution and an ordinance is that the ordinance prevails over a resolution. In addition, the City contends if it could not change the matters addressed in the resolution, there is no need to provide notice and hearing to the property owners to pass upon objections to the special assessments levied by the enactment of the ordinance. K.S.A. 12-6a10. Finally, the City contends the language in 12-6a09(a) cited by landowners refers only to the *method* of assessment and not the percentage allocation of costs of the project.

The street improvement project in the instant case was initiated by petition of all the landowners pursuant to 12-6a04(2). In accordance with that process, the City adopted its resolution (without notice and hearing) authorizing the paving project, and further providing in the resolution the estimated cost of the project, the improvement district, the method of assessment, and the apportionment of the project cost between the improvement district and the City at large. The *method* of assessment set forth in the resolution was based upon the appraised valuation of each lot in the subdivision, as permitted by K.S.A. 1985 Supp. 12-6a08. Upon completion of the paving work, the proposed assessment roll was prepared and notice published of a hearing of the special assessments to be levied. At this hearing, objections to the proposed assessments were considered. 12-6a09. There is no indication in the record before us whether the plaintiffs appeared at this hearing. After consideration of objections and any amendments to the proposed assessments, the governing body, by enactment of the ordinance, levied the special assessments. 12-6a10.

The ultimate question under this procedure is whether the governing body is bound by its earlier resolution and the find-

ings contained therein. K.S.A. 12-6a09 states that the assessments are "to be determined in the manner set forth in the resolution." The City's interpretation of this language apparently means that only the *method* of assessment specified in the resolution may not be subsequently changed by ordinance. We do not read the statute in this manner. Not only does the statute contemplate the method of assessment, it also requires the area of the improvement district, the nature of the improvement, and the apportionment of costs to be the same as provided in the resolution. All of these components enter into the computation of the special assessment and, accordingly, determine the *manner* set forth in the resolution. Contrary to the City's argument that the hearing and eventual assessment ordinance would be pointless if the resolution must be followed, there could be objections to erroneous calculations, valuations assigned to the affected lots, areas to be included in the improvement district, and even the actual costs incurred in the improvement project.

Case law on this question is not abundant. In at least one instance, however, Kansas has upheld assessments only to the extent that they come within the limits prescribed by the original resolution. See *Kansas Town Co. v. City of Argentine*, 5 Kan. App. 50, 47 Pac. 542 (1896), *aff'd* 59 Kan. 779 (1898). In *Kansas Town Co.*, property owners of lots situated outside the improvement area under the resolution, but within the improvement area under the ordinance, were relieved of the assessment. The entire ordinance levying the assessment was not invalid, but the ordinance was enforced only to the extent that it was in conformity with the resolution.

Finally, if the legislature intended the governing body to be bound by only the *method* of assessment specified in the resolution, it could have used language to that effect. K.S.A. 12-6a04(1), in providing for notice, uses the language "proposed improvement district," "proposed method of assessment," and "proposed apportionment of cost." The City is thus required to make findings by resolution as to "the boundaries of the improvement district," "the method of assessment," and "the apportionment of cost." In this case the procedure used did not require notice and hearing, but 12-6a04(2) is applicable and requires the same findings and resolution as set forth above. By not using the language "proposed apportionment of cost" after

having used "proposed" in the same paragraph, the legislature demonstrates its intent that the resolution be binding, not only as to the boundaries and method of assessment, but also as to the apportionment of cost.

Thus, the City is bound by the resolution and the trial court erred in granting summary judgment to the City on this issue.

### d. Cross-Appeal

The question presented is the amount of interest to be included in the first assessment installment.

K.S.A. 12-6a10 provides, in pertinent part: "Interest on the assessment *between the effective date of the ordinance levying the assessment* and the date the first installment is payable shall be added to the first installment. The *interest for one year on all unpaid installments* shall be added to *each subsequent installment* until paid."

The landowners argue that, under this statute, the City erroneously assessed a full year's interest (1983) with the first installment. The City contends a full year's interest was both permitted by 12-6a10 and necessary under K.S.A. 10-114 in order for the City to meet its bond obligations incurred as a result of the improvement project.

The trial court agreed with the landowners' position and determined that the first assessment installment overcharged interest to the landowners by providing for a full year's interest. We agree with the trial judge. 12-6a10 provides that interest on the first installment commences running on the effective date of the ordinance (*i.e.*, the date of publication). A full year's interest for the first installment would be appropriate under 12-6a10 only if the effective date of the ordinance corresponded with the beginning of the year for general property tax purposes. In this case it did not. The ordinance was published on July 16, 1983. This is the effective date from which interest should have been computed.

The proviso following the language in 12-6a10, determining when interest starts to accrue, does not aid the City's argument. It merely states: "*Provided,* All of the installments, together with the interest accrued or to accrue thereon, may be certified by the city clerk to the county clerk in one instrument at the same time, and such certification shall be good for all of the installments, and the interest thereon payable as special taxes." This provision

does no more than to eliminate the necessity of having the city clerk certify each annual assessment installment for collection. Instead, the total special assessments for an improvement can be certified in one document, at one time.

The City also argues that K.S.A. 10-114 permits it to include a full year's interest in the first installment. If applicable, 10-114 does not apply to the facts of this case, at least not to the record before us.

The relied upon language of 10-114 states: "The *ordinance* apportioning such costs *may provide for the collection* of two installments with not to exceed interest for two years, or one installment and interest for one year or more, *in the first year* in which such assessment is to be collected, *if the bonds for such improvement and interest on the same mature in such manner as to require such levy.*" (Emphasis supplied.)

K.S.A. 10-114 does not authorize the governing body to assess interest before the ordinance is enacted and include it in the first payment. In addition, there is nothing in the record before us indicating when general obligation bonds were issued and sold to finance the improvement cost apportioned to the City at large. Thus, there is no way to determine whether the maturity date of the bonds necessitates such a levy. The City has not met its burden of showing error.

Affirmed in part, reversed in part, and remanded.