# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Schenk & Sons; Silver, Green : 
and William Schenk & Sons; Silver, : 
Green, Winitsky and William Schenk : 
& Sons; Glendale Enterprises, Inc.; : 
Huntingdon Valley Enterprises, Inc.; : 
William Schenk & Sons, equitable : 
owner; Silver, Green and William : 
Schenk & Sons, Inc., equitable owner; : 
Huntingdon Valley Enterprises, : 
equitable owner, : 
                    Appellants : 
                        : 
         v. : No. 1881 C.D. 2013
                    : Argued: June 20, 2014
Northampton, Bucks County, Municipal : 
Authority : 

BEFORE: HONORABLE DAN PELLEGRINI, President Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge

**OPINION BY JUDGE BROBSON**          **FILED: July 30, 2014**

        Nonresidential property owners (Property Owners)[1] appeal from an order of the Court of Common Pleas of Bucks County (trial court). The trial court overruled Property Owners' preliminary objections to the petitions for appointment of a Jury of View (Petitions) filed by the Northampton, Bucks County Municipal

---

        [1] As indicated in the caption, Property Owners include: William Schenk & Sons; Silver, Green and William Schenk & Sons; Silver, Green, Winitsky and William Schenk & Sons; Glendale Enterprises, Inc.; and Huntingdon Valley Enterprises, Inc. The Property Owners own property in Northampton Township (Township) in Bucks County.

Authority (Authority).[2]  The Authority filed the Petitions in order to recoup the costs of extending a public sewer system into the area in which Property Owners' properties are located.  We affirm the trial court's order, but on slightly different grounds.

## I.  BACKGROUND

The Authority and Property Owners acknowledge that, on April 30, 2008, the Pennsylvania Department of Environmental Protection issued an order directing the Township to extend its public sewer facilities into certain areas, including what is referred to as "Sewer District 3," in which all of the subject properties are located.  On or about December 15, 2010, the Authority completed construction of the sewer system extension into Sewer District 3.

On February 2, 2011, following the completion of the sewer extension project, the Authority adopted Resolution 2011-1098 (Resolution 1098), relating to the costs of the construction of the sewer system expansion into Sewer District 3. In Resolution 1098, the Authority notes its powers under the Municipal Authorities

---

[2] The Authority was created in 1965, and its purpose is to provide public water and sewer services to Northampton Township (Township).  (Property Owners' Complaint in their related declaratory judgment action docketed by the Court of Common Pleas of Bucks County under the same docket number as the present Petitions, at ¶ 8.)  The declaratory judgment action involved a resolution the Authority adopted relating to tapping fees and its determination of what is referred to as equivalent dwelling units or "EDUs."  As indicated in Count II of the declaratory judgment action, Property Owners also challenged the Authority's intention to charge each Property Owner $10,000 for the cost of construction and installation of a "manhole sampling chamber," and $100 each for the cost of "manhole/sampling chamber vacuum testing fee[s]."  (*Id.* at ¶ 27.) In its opinion issued under Pa. R.A.P. 1925, the trial court explained that it had intended to sever the declaratory judgment action from the Petitions, but that had not been accomplished.  Thus, the certified record contains all docketed materials from both matters.

Act (Act)[3] to assess and recover the costs of sewer construction, and it specifically notes that the Act "provide[s] that the benefit assessment shall be assessed in a manner provided under the Act for the exercise of eminent domain." Resolution 1098 indicates that "the Authority has determined that each of the *Residential* Properties abutting the [construction] Project have been presently benefitted by the Project." (Emphasis added.) Resolution 1098 thereafter provides:

> *[I]n accordance with the benefit assessment method provided for in the Act, the Authority Board has determined that the fair and reasonable benefit assessment for each of the Residential Properties benefitted by the Project shall be in the amount of [$1,878.44]* after consideration of all relevant assessment factors and adjustments for all governmental grants acquired by the Authority, and
>
> . . .
>
> [T]hat the owners of record of each of the Residential Properties may execute and present to the Authority on or before April 1, 2011, a document entitled, "Western End Sanitary Sewer Project, Phase II Residential Public Sewer Payment Plan Agreement ("Agreement") . . . and,
>
> . . .
>
> *[T]hat any owner of record of the Residential Properties within the Project that have failed or refused to enter into the Agreement, the Authority's solicitor is authorized to file Petitions for Appointment of Board of View to Assess Benefits* and thereafter to collect the entirety thereof from the subject property owners as determined by the Act.

(Reproduced Record (R.R.) at 95a-96a; emphasis added.)

---

[3] 53 Pa. C.S. §§ 5601-5623.

3

On the same day, the Authority adopted Resolution 2011-1099 (Resolution 1099), which in most respects is identical to Resolution 1098 except that it pertains to the nonresidential properties in the sewer expansion area. (R.R. at 105a-09a.) Resolution 1099 includes an Exhibit A, which, unlike the $1,878.44 assessment determined in Resolution 1098 for residential properties, identifies individual assessments on the nonresidential properties in varying amounts. All of the nonresidential assessment amounts are in increments of $11,873.93, the highest being $189,982.88 (which is 16 x $11,873.93).

By letters dated February 3, 2011, the Authority informed Property Owners that it had "determined the benefit Assessment of your property" as a result of the sewer system extension. (R.R. at 110a-120a.) The letter also provides:

> A Benefit Assessment Payment Plan Agreement is being offered by the Authority to help property owners …. This agreement allows each property owner to finance the payment of the determined benefit Assessment and administration costs over a five (5) year period payable in monthly installments at a 3.8% interest rate . . . .
>
> *Please note that you are not required to enter into the Benefit Assessment Installment Agreement. You may choose to make payment in full or choose to have the Jury of View selected by the Bucks County Court of Common Pleas determine the benefit Assessment* to your property and make payment in accordance with that determination.
>
> In the event that our office does not receive payment or an executed Benefit Assessment Installment Agreement by April 1, 2011, *the Authority will assume that you have selected the Jury of View determination method* . . . . Commencing in April 2011, the Authority will file a required petition in the Bucks County Court of Common Pleas seeking a hearing before a Jury of View to determine the benefit Assessment to your property

4

based upon improvements incurred, i.e., public sanitary
sewer service.

(*Id.* (emphasis added).)  The letters indicated that the Authority attached a copy of
the proposed agreement to the letter.

By way of example, one of the Public Sanitary Sewer Payment Plan
Agreements signed by a residential owner provides, in pertinent part:

[T]he ability of the Authority to determine assessment on
the Property through *the right of the eminent domain
process is intended to be waived* by the parties herein by
entering into this Agreement . . . .

(R.R. at 409a-410a (emphasis added).)

After Property Owners failed to sign and submit the offered
Agreements, the Authority filed the Petitions for the appointment of a jury of view,
requesting a "Board of View to assess benefit to the premises."[4]  (Supplemental
Reproduced Record (S.R.R.) at 39b-78b.)    The Petitions allege that the
construction had provided Property Owners' properties with a benefit, that the
Authority had "notified [Property Owner] of the proposed benefit assessment" (in
the amount indicated in the particular individual Property Owner's Agreement),
and that, in accordance with the Act, the Authority was requesting the trial court to
appoint a "Board of Viewers to assess the benefit to the Premises in accordance
with municipal law." (*Id.* at ¶ 9 of each Petition.)

Property Owners filed preliminary objections to the Petitions.  Among
the objections to the Petitions, Property Owners faulted the amounts of the

---

[4] Property Owners' Petitions refer to the appointment of a Jury of View.  Because the
applicable case law and statutory provisions generally refer to a board of view or board of
viewers, when referencing the appointed body to which the Authority refers we will hereafter
refer to a board of viewers.

assessments the Authority deemed to be appropriate for the construction, as identified in the Authority's letters and proposed Agreements. With regard to the assessments the Authority proposed in its letters, Property Owners asserted that the amounts improperly imported charges that were inappropriate to the calculation of construction costs and the associated benefit to Property Owners. Further, Property Owners, which as noted above are all nonresidential owners, objected to the disparity between the assessments proposed by the Authority to residential owners and the assessments proposed to the nonresidential owners. Thus, although the Petitions sought only the appointment of a board of viewers to determine the proper assessment, Property Owners claimed that the trial court should dismiss the Petitions based upon arguments relating to the Authority's method of determining the proposed assessments and the Authority's alleged misapplication of its rates, rules, and regulations. Property Owners also claimed that the Petitions failed to state a cause of action upon which relief may be granted.

By order dated September 27, 2013, the trial court overruled the preliminary objections. Property Owners filed a notice of appeal and, in compliance with the trial court's direction, submitted a statement of errors complained of on appeal. It is clear that the essential claims Property Owners asserted in their preliminary objections pertain to the Authority's conduct in reaching settlements with some property owners in the subject sewer district. As indicated by the quotations above from the letters, the Authority stated that it was acting in accordance with its rights under the Act to proceed under the law of eminent domain to collect construction costs. Property Owners argued that in order to comply with the Act, the Authority was required to follow the eminent

6

domain process, namely to have a board of viewers determine the amount of benefit to be assessed upon *all* properties in the sewer district.

The trial court rejected Property Owners' arguments. First, the trial court rejected Property Owners' claim that the letters and Agreements constituted something other than a settlement offer. Next, the trial court concluded that the Authority either had inherent power to enter contracts or that the Authority had the power under the Eminent Domain Code (Code)[5] to settle monetary disputes with property owners. Finally, the trial court rejected a claim by Property Owners that the Authority's disparate offers as between residential and nonresidential property owners violated Property Owners' rights under the Equal Protection Clause to the United States Constitution.

Property Owners appealed to this Court,[6] raising the following issues: (1) whether the trial court erred in concluding that the Authority complied with the requirements for assessment of benefits; and (2) whether the trial court erred in concluding that the Authority did not improperly treat nonresidential owners disparately from residential owners. We note, however, that the focus of Property Owners' argument rests on their claim that a board of viewers is not capable of performing a proper assessment because of the Agreements between the Authority and some residential property owners.

---

[5] 26 Pa. C.S. §§ 101-1106.

[6] The standard of review of a trial court's order overruling preliminary objections to a petition to appoint a board of viewers under the Code is limited to considering whether competent evidence in the record supports necessary factual findings and whether the trial court erred as a matter of law. *Ristvey v. Dep't of Transp.*, 52 A.3d 425, 429 (Pa. Cmwlth. 2012).

7

## II. DISCUSSION

Because this matter presents a challenge to the Petitions for appointment of a board of viewers under the Code, we begin by noting that preliminary objections in the context of proceedings under the Code are distinct from preliminary objections in the context of a proceeding under the Pennsylvania Rules of Civil Procedure. *In re Redevelopment Auth. of City of Philadelphia*, 891 A.2d 820, 824 (Pa. Cmwlth.), *aff'd in part and rev'd in part on other grounds*, 938 A.2d 341 (Pa. 2006). In the context of a case where preliminary objections are raised in response to the appointment of a board of viewers, the courts have held that the scope of preliminary objections is the same as preliminary objections to a declaration of taking. 26 Pa. C.S. § 504(d) ("An objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers."). Section 306 of the Code addresses such preliminary objections and provides that a trial court may make an evidentiary record in order to resolve factual issues. 26 Pa. C.S. § 306(f)(2). In proceedings under the Code, preliminary objections are intended as a procedure to resolve all legal and factual challenges to a declaration of taking before proceeding to the damages issue—*i.e.*, hearing by an appointed board of viewers.

Sections 5607(d)(21) and (22) of the Act provide two specific methods by which a municipal authority may recover the costs of sewer construction, providing authorities with the following powers:

> (21) *To charge the cost of construction of any sewer . . . constructed by the authority against the properties benefited, improved or accommodated thereby to the extent of such benefits. These benefits shall be assessed in the manner provided under this chapter for the exercise of the right of eminent domain.*

(22) *To charge the cost of construction of a sewer . . . constructed by the authority against the properties benefited, improved or accommodated by the construction according to the foot front rule. Charges shall be based upon the foot frontage of the properties benefited* and shall be a lien against such properties. Charges may be assessed and collected and liens may be enforced in the manner provided by law for the assessment and collection of charges and the enforcement of liens of the municipality in which such authority is located. No charge shall be assessed unless prior to the construction of a sewer . . . the authority submitted the plan of construction and estimated cost to the municipality in which the project is to be undertaken and the municipality approved it. The properties benefited, improved or accommodated by the construction may not be charged in the aggregate amount in excess of the approved estimated cost.

(Emphasis added.) These provisions are commonly referred to as the benefits method of assessment and the foot front or foot frontage method of assessment, respectively.

Property Owners argue that these two methods are the only means by which a municipal authority may act to collect construction costs for the benefit conferred upon properties for sewer improvements and that the Authority exceeded its powers by entering into agreements with property owners rather than submitting to a board of viewers the task of determining the benefit to be assessed all properties improved by the construction project. As we explain below, we agree with Property Owners' argument that municipal authorities may seek to recover their construction costs only through one of these methods (or a combination of both), but we conclude that, despite the Authority's error, a board of viewers may still assess the benefit bestowed by the construction on their properties.

9

Our Supreme Court's decision in *Whitemarsh Township Authority v. Elwart*, 196 A.2d 843, 846 (Pa. 1964), discusses the two methods and also helps to clarify the reasons why municipal authorities must elect one of these methods or a combination of the two methods. In *Whitemarsh*, a municipal authority sought to recover costs associated with a sewer construction project. Initially, the municipal authority adopted a resolution indicating that it would use the foot front method for all properties benefited by the construction. Later, the municipal authority adopted a second resolution indicating that if the foot front method could not be used in a legal manner—*i.e.*, a fair and equitable manner, to assess any properties, the benefit would be determined by a board of viewers. The municipal authority filed a municipal claim against one property owner, seeking to recover costs allegedly based upon the benefits method. The property owner in that case challenged the action by asserting that the municipal authority should have applied the foot front method.

The Supreme Court rejected the suggestion that the Second Class Township Code[7] provisions for benefits assessments applied. Rather, the Supreme Court referred to the Act and the two methods:

> It can be seen that the Legislature vested in every authority the right to charge certain costs of construction by the "benefits method" and the "foot front method," the two long known and familiar methods of imposing such charges. In the event the Authority chooses the "benefits method," the charges to be made by the Authority are determined by a jury of view, this being the procedure provided in all municipal codes for eminent domain proceedings. If the Authority chooses the "foot front method," the charges to be made by the Authority are

---

[7] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

10

determined by "the plan of construction and estimated cost" that are approved by the municipality. *Thus it can be seen that in either event the basis for the charges, and therefore the control, are not within the purview of the Authority.* It can also be seen from [Sections 5607d)(21) and (22)] . . . that either or both methods may be used by the Authority and that they both may be used simultaneously on the same project. No restricting words appear, such as are present in The Second Class Township Code; the disjunctive "or," which would restrict the simultaneous use of both methods, is not present.

*Whitemarsh*, 196 A.2d at 846 (emphasis added). The Supreme Court recognized that in some cases, the use of a single method would not result in "an adequate measurement of the fair proportions of the cost of constructing the sewer." *Id.* at 848. Moreover, as indicated by the highlighted language, the Supreme Court recognized that the power of municipal authorities to determine an assessment is limited—*i.e.*, "not within the purview of the Authority." *Id.* The Supreme Court observed the overarching goal of benefits assessment as follows:

This is a matter of balancing the equities between one property owner and the remainder of the property owners also serviced by the sewer system. If the [owners] in this case do not pay their fair share of the cost of constructing this sewer, the remaining property owners must necessarily pay more than their fair share; if not in the form of assessment, then ultimately in the form of sewer service charges which will and must pay for the system.

*Whitemarsh*, 196 A.2d at 848. Thus, the Supreme Court made clear that the recovery of sewer construction costs must be done in an equitable manner. Strict compliance with Section 5607(d)(21) or (22) of the Act (or a combination of both) furthers the apparent legislative goal of assessing benefits in a fair and equitable manner. The Agreements the Authority executed with some property owners represent a method at odds with the Supreme Court's admonishment in

11

*Whitemarsh* that the "basis of the charges" not be controlled by a municipal authority. The Agreements in this case could potentially thwart the legislative objectives of the Act if, as suggested by the Supreme Court in *Whitemarsh*, the Agreements were to affect the equitable assessment of other properties by a board of viewers.[8]

We believe, however, that a board of viewers could assess Property Owners' properties in a manner that is equitable even given the allegedly favorable deals reflected in the Agreements between the Authority and some property owners. We have confidence in such an outcome, and note that, although a total assessment of benefited properties cannot exceed the total cost of construction, *see Stockdale Borough v. Astle*, 189 A.2d 152, 154 (Pa. 1963), there is nothing in the Act that prohibits an under-recovery of costs where the equities suggest that an assessment might otherwise cause some property owners to bear a greater proportional burden than they would have had a municipal authority complied with the construction provisions of the Act.

---

[8] Our conclusion regarding the Authority's error in proceeding to enter into the Agreements with some property owners and by failing to comply strictly with Section 5607(d)(21) of the Act finds additional support in this Court's recent decision in *Township of Summit v. Property Located at Vacant Land in Summit Township*, ___ A.3d ___ (Pa. Cmwlth., No. 399 C.D. 2013, filed May 23, 2014). In *Township of Summit*, we concluded that Summit Township's attempt to collect money associated with a sewer improvement project by filing a lien under the Municipal Claim Act, Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505, was improper, because the township failed to comply with the statutory provisions of the Second Class Township Code for the assessment of costs for sewer improvements. "Absent compliance with statutory requirements for assessment, the Municipal Claim Act's requirement that the municipal claim must be 'lawfully imposed or assessed' on the property therefore is not satisfied and the claim cannot become a lien on the property by operation of law." *Township of Summit*, slip op. at 10-11.

12

In *Whitemarsh*, our Supreme Court, by holding that a municipal authority is not bound to a single assessment method (of the two available) in seeking to recoup its sewer construction costs, implicitly confirmed that a municipal authority need not include all properties in a petition for the appointment of a board of viewers. In seeking to arrive at equitable and fair benefit assessments, however, a board of viewers will necessarily have to consider the larger picture, including the nature of the Agreements between the Authority and the settling property owners.

Although it may be that the Authority may not seek or may lack the power to recover any further direct costs of construction from those parties with whom it has entered into the Agreements, the Agreements do not affect a board of viewer's duty and powers under Section 5607(d)(21) of the Act. A board of viewers may consider all evidence relevant to its determination of the benefit conferred upon the remaining properties, including the Agreements between the Authority and some property owners.

This Court has no power to direct the board of viewers as to how it should perform its task, but we observe below some possibilities regarding how a board of viewers' evaluation and decision could ultimately reflect the amounts paid by settling property owners. For example, in keeping in mind the Supreme Court's admonishment in *Whitemarsh* regarding the equities in a benefits assessment determination and the Supreme Court's comment that all property owners should contribute their fair share to a construction project, a board of viewers could consider, among other things, the ratio between the amount the settling property owners paid to the Authority to the portion of the costs of construction attributable

13

to that segment of property owners.[9]  In turn, with regard to Property Owners, the board of viewers might consider what similar ratio exists as to that segment of owners relative to the costs attributable to that segment.  Such an approach might avoid the consequence of inequitable assessments that the Supreme Court recognized in *Whitemarsh*. Thereafter, in accordance with the process afforded in the Code, if Property Owners believe that the board of viewers' decision still results in inequity, Property Owners have the right to seek de novo review before a court of common pleas.[10]

Property Owners also contend that the Authority lacked the power to enter into the Agreements with the residential property owners.  The trial court

---

[9] We recognize that the number of residential property owners who elected to enter into an agreement with the Authority is considerably smaller than the total number of residential property owners.  Refinement of this suggested approach, if a board of viewers deems the approach useful, will depend on the evidence presented to a board of viewers.

[10] Sections 516 and 517 of the Code, 26 Pa. C.S. §§ 516-17 provide for appeals, in pertinent part, as follows:

> § 516. Right of appeal
>
> (a)  Extent of right.—
>
> (1)  Any person aggrieved by the decision of the viewers may appeal to the court.
>
> § 517.  Appeals
>
> (a)  Contents.—The appeal shall set forth:
>
> . . . .
>
> (5) A demand for a jury trial, if desired.
>
> (b)  Jury trial.—
>
> . . . .
>
> (2)  If no party makes a demand for a jury trial . . . the court shall try the case without a jury.

viewed the letters the Authority sent to Property Owners as an offer of settlement to recoup the construction costs, thus enabling the Authority to avoid proceeding under Section 5607(d)(21) of the Act and the Code. The trial court concluded that Section 5607(13) of the Act[11] provided the Authority with the power to enter into contracts, including those the Authority executed with some property owners as a means to recover constructions costs, notwithstanding the specific provisions of the Act pertaining to the recovery of such costs—*i.e.*, Sections 5607(21) and (22) of the Act. The trial court alternatively concluded that Section 501 of the Code, 26 Pa. C.S. § 501, also authorized the Authority to settle with property owners before proceeding to the appointment of a board of viewers.

As we discussed above, we believe that a board of viewers has the power to make benefit assessments in this case despite the Agreements. Thus, we need not address the question of whether the Authority exceeded its powers. We note, however, in passing, that while Section 5607(d)(13) does provide municipal authorities with the power to enter into contracts, the more specific provisions of the Act, Sections 5607(d)(21) and (22) compel strict compliance in order to serve the goal of equity in benefits assessments. We also note that although Section 501 of the Code does vest condemnors and condemnees with the right to enter settlement agreements as to the amount of damages associated with a *taking*, we are not convinced that all provisions of the Code apply in benefit assessment proceedings. First, that provision applies only to *pending* proceedings, and, in this

---

[11] Section 5607(d)(13) of the Act provides authorities with the power "[t]o make contracts of every name and nature and to execute all instruments necessary or convenient for the carrying on of its business."

case, there were no pending proceedings under the Code at the time the Authority entered into the Agreements.

Based upon the foregoing reasoning, we affirm the trial court's order overruling Property Owners' preliminary objections.[12]

_____
P. KEVIN BROBSON, Judge

---

[12] We also note briefly Property Owners' argument regarding the applicability of the eminent domain provisions of the Second Class Township Code. The only reference to the law of eminent domain in the applicable Chapter of the Act is found in Section 5615 of the Act. Although that provision primarily relates to the acquisition of land, subsection (b) provides that the "right of eminent domain shall be exercised by the authority in the manner provided by law for the exercise of such right by municipalities of the same class as the municipality which organized the authority." Section 5615(b) of the Act, 53 Pa. C.S. § 6515(b). *See Bern Twp. Auth. v. Hartman*, 451 A.2d 567 (Pa. Cmwlth. 1982). Although Property Owners may be correct in arguing that the Second Class Township Code may have some applicability by virtue of the language in Section 5615 of the Act, we do not need to address this issue based upon our conclusion above regarding the board of viewers' ability to perform an assessment.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Schenk & Sons; Silver, Green and William Schenk & Sons; Silver, Green, Winitsky and William Schenk & Sons; Glendale Enterprises, Inc.; Huntingdon Valley Enterprises, Inc.; William Schenk & Sons, equitable owner; Silver, Green and William Schenk & Sons, Inc., equitable owner; Huntingdon Valley Enterprises, equitable owner,

Appellants

v.      No. 1881 C.D. 2013

Northampton, Bucks County, Municipal Authority

# **O R D E R**

AND NOW, this 30th day of July, 2014, the order of the Court of Common Pleas of Bucks County is AFFIRMED.

_____
P. KEVIN BROBSON, Judge