## Scranton Sewer.

*Appeals—Sewers—Time within which appeal may be taken—Acts of May 16,*
*1891, P. L. 75, May 19, 1897, P. L. 67, and April 2, 1903, P. L. 124.*

The permission given by the Act of May 16, 1891, P. L. 75, and repeated
in the Act of April 2, 1903, P. L. 124, to take an appeal within thirty days
from the confirmation of the report of viewers, does not take away the
right given by the Act of May 19, 1897, P. L. 67, to appeal within six months.

*Sewers—Municipalities—Ordinance—Municipal lien—Illegal action of*
*city engineer—Assessments.*

A municipality can impose a valid municipal lien for street improvements
only when the improvements are made in pursuance of law and the mode
pointed out by the city ordinance is strictly followed.

Where a city enacts an ordinance authorizing the construction of sewers
in certain streets, and thereafter the city engineer without any authority
blots out from the map showing the location of the sewers, certain portions
of streets covered by the ordinance, a property owner along the line of the
sewer cannot be compelled to pay an assessment for benefits to his property
arising from its construction.

Argued Feb. 20, 1905. Appeal, No. 35, Jan. T., 1904, by
The Lackawanna Iron and Steel Company from order of C. P.
Lackawanna Co., Sept. T., 1902, No. 1470, dismissing excep-
tions to report of viewers In re Costs and Expenses of Sewer,
Section G. Seventeenth Sewer District of the City of Scranton.
Before MITCHELL, C. J., DEAN, BROWN, POTTER and EL-
KIN, JJ. Reversed.

Exceptions to report of viewers. Before NEWCOMB, J.
Amongst the exceptions was the following :

"Fourth: The plans prepared for the said work and filed
in the bureau of engineering, and which are distinctly referred
to and made part of said ordinance, included as a portion of
the territory to be sewered by said sewer certain lots and
blocks, situate south of Gallagher court, which said lots and
blocks were eliminated by the city engineer after the passage
of said ordinance and after approval of the said plans and
specifications, and were not taken into consideration by the
viewers so that the viewers' report is based upon a different
territory from that which is involved in the ordinance and in

the plans and specifications prepared for said work. This change of territory invalidates the ordinance completely."

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to report of viewers.

*Everett Warren*, of *Willard, Warren & Knapp*, with him *John F. Murphy* and *Harold A. Watres*, for appellant.—The proceeding to assess damages for the construction of a sewer is one which very nearly resembles the confiscation of property. None of the taxpayers may be in favor of having a sewer constructed; none of them may desire to connect with it or to use it; the land which it is supposed to sewer may be altogether vacant and unimproved land, and no necessity may exist for having a sewer; notwithstanding these circumstances, if the proceeding is properly taken under the act of assembly, and properly pursued, and the sewer built in accordance with the provision of the law governing such matters, property owners have no choice but to pay the assessment made, even though the necessity of using the sewer may never arise so far as their particular properties are concerned. And because the proceeding is one so highly prejudicial to the interests of the property owners, the courts have always held municipal corporations to the strictest compliance with the acts of assembly authorizing such assessments and the enforcement of the payment for public works: Western Penna. Ry. Co. v. Allegheny, 92 Pa. 100; Hershberger v. Pittsburg, 115 Pa. 78; Ferguson's App., 159 Pa. 39.

*David J. Davis*, city solicitor, with him *H. R. Van Deusen*, assistant city solicitor, for appellee.—A property owner can complain only of defects in the assessment which affect his own property: Pittsburg v. MacConnell, 130 Pa. 463; Harrisburg v. Baptist, 156 Pa. 526; Erie v. Butler, 120 Pa. 374.

OPINION BY MR. JUSTICE BROWN, October 9, 1905:

There was a motion to quash this appeal because it was not taken within thirty days from the confirmation of the report of the viewers. It is based upon the act of May 16, 1891,

P. L. 75, which provides that an appeal may be taken within
thirty days.   This provision reappears in an amendment to the
act passed April 2, 1903, P. L. 124.   The permission to ap-
peal within thirty days does not take away the right given by
the act of May 19, 1897, P. L. 67, to appeal within six months,
and the motion is therefore denied.

An ordinance of the city of Scranton, approved September 5,
1902, authorizes the construction of a sewer in certain streets
and courts between designated points, to be known as section
" G " in the seventeenth sewer district of that city.    On
September 8, 1902, the city presented its petition to the court
below, reciting the passage of the said ordinance, and asking
for the appointment of viewers to assess the costs and expense
of the sewer and the benefits resulting from it, in accordance
with the act of May 16, 1891, P. L. 75.   Viewers were ap-
pointed, who made report, assessing the sum of $16,808.42 to
be paid by the appellant for the benefits to its properties.

Though the viewers were appointed to assess the cost, ex-
pense and benefits of a sewer to be built on lines clearly des-
ignated in the ordinance, they assessed the cost and expense
of the construction and the benefits of a different one.   No
other action than the ordinance of September 5, 1902, was ever
taken by the city councils in reference to the sewer, but the chief
engineer of the city, upon the suggestion of his superior, the
director of public works, blotted out from the map showing the
location of the sewer certain portions of streets and courts on
which it is to be constructed, because, in his judgment, the
improvements in the blotted out portions do not justify the
extension of the sewer through them.   Just when he assumed
this wholly unwarranted authority does not appear, but when
the viewers met they confined their investigation to what must
be regarded as the sewer system of the chief engineer, and not
the one adopted by the city authorities.   That official blotted
out Irving avenue from Front street to Moosic street, though
the ordinance directs the sewer to be constructed from Front
street to Moosic street, and thence to River street; he blotted
out Front street from South Webster street to Irving avenue
and portions of Gallagher and other courts in the same locality.
Though the ordinance called for the sewer in these blotted out
portions of the streets and courts, the viewers passed upon the

question of the cost and expense and the resultant benefits, as if it were to be constructed only on the lines indicated on the tampered with map. They followed the map of an engineer; but they were directed to act in pursuance of the provisions of an ordinance of the city of Scranton and to ascertain and assess the cost and expense and assess liability for the sewer therein specifically designated. Sewer systems can be adopted only by ordinance, but the one upon which the appellant has been assessed for benefits is nothing but that of a city's employee.

In dismissing appellant's second exception to the report of viewers, the court below said : " There remains to be considered the effect of a variance between the first section of the ordinance and the map or plan attached as part thereof in respect to the extent of the proposed sewer. This section of the ordinance specifies certain blocks of streets and courts in which the sewer is to be built which were originally included in the map but afterwards, before the appointment of viewers and without amendment, the department of public works decided to omit; and thereupon they were obliterated on the map and the view was had according to the map as so altered, and therefore not strictly according to the ordinance. The question so presented is really one of first impressions and by no means free from difficulty. On the one hand the alteration of the map was entirely unauthorized and in a sense unlawful. At first blush it would seem to go so materially to the integrity of the proceeding as to make it invalid. But on the other hand we are unable to discover, and counsel have not indicated to us, how the exceptants have been or may be injuriously affected by that means. There were no damages involved in the case ; neither the cost of the sewer nor the benefits assessed will be increased as a result of the alteration. . . . As a result of the change in the map, the view and the report do not go outside of the streets mentioned in the ordinance, but certain blocks or parts of streets or alleys are omitted." Whether the appellant had been injuriously affected by the change in the map and the substitution of the sewer system of the chief engineer for the one adopted by the city itself is not the test of its right to complain. The system is not its system, and it may or may not have been in favor of it. Without regard to its wishes a sewer can be constructed by the municipality after appropriate

municipal action, but only after such action and the provisions of a valid ordinance have been followed can it be called upon as the owner of private property to pay for the benefits arising from the public improvement. This is not an arbitrary rule, but a just and wise one, not to be broken in on by any exception. A municipality can impose a valid municipal lien for street improvements only when the improvements are made in pursuance of law and the mode pointed out by the city ordinance is strictly followed. Such liens do not rest on any agreement or specific assent of the owner of the land charged with the burden, and the improvement is often against his wish. A clear right must, therefore, be shown by the municipality to justify such an act of sovereign power. Municipal charges legally laid on lands are sufficiently large without subjecting them to any imposed contrary to law: Western Pennsylvania Railway Co. v. City of Allegheny, 92 Pa. 100 ; Hershberger v. City of Pittsburg, 115 Pa. 78 ; Morewood Avenue, Ferguson's Appeal, 159 Pa. 39. This is equally true of benefits assessed under the act of 1891.

The appellant can be compelled to help pay for what the ordinance provides. It cannot be assessed for anything else, but the viewers have assessed it for something else, and its complaint is, therefore, a substantial one. In asking that it pay nearly $17,000 for benefits the city must show a sewer system to be constructed according to the directions of an ordinance, but instead its claim is for one mapped out by a city engineer on a map which he was not authorized to make. If his map cuts out a portion of the system as adopted by the city councils, the system is no longer the city's for the purpose of compelling property owners to contribute to the cost of its construction. To help pay for the construction of a sewer adopted by the municipal authorities is a liability to which the appellant may be subjected, but the liability imposed upon him by the report of the viewers is not such. As it must be set aside for the reason stated, the other questions raised need not now be considered.

The decree of the court below is reversed and the report of the viewers is set aside, at the cost of the city of Scranton.