**In the Matter of Thomas and Barbara LORD, Appellants,**

v.

**BOROUGH OF POTTSTOWN, Michael E. Kunz, Appellee.**

No. 96–CV–7181.
Bankruptcy No. 95–BK–7181.

United States District Court,
E.D. Pennsylvania.

Jan. 28, 1997.

Charles J. Phillips, Baskin, Leisawitz, Heller & Abramowitch, Wyomissing, PA, and Gary E. Lewis, Keenan, Ciccitto, Brant & Hixson, Collegeville, PA, for Appellants.

Nathalie D. Martin and Joanne Semeister, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Appellee.

Frederick L. Reigle, Reading, PA, Pro Se.

Frederic Baker, Assistant U.S. Trustee, Philadelphia, PA, Pro Se.

### MEMORANDUM

CAHN, Chief Judge.

Appellants Thomas and Barbara Lord ("Lords") appeal the decision of the Bankruptcy Court that the ninety day limitation of liability for water service charges set forth in Pennsylvania's Municipality Authorities Act, 53 P.S. § 306B(h.1), does not apply to a landlord's liability for delinquent water charges, when the municipality had no knowledge of the identities of the tenants and had no agreements with the tenants to provide service.

## I. Background

Thomas and Barbara Lord own 45 to 50 low-income residential properties in the Borough of Pottstown ("Borough"). These multi-unit and single family dwellings are all tenant-occupied. Mr. Lord is the full-time manager of the properties.

Only about thirty percent of the properties are governed by written leases between the Lords and their tenants, with the remaining units subject to oral agreements. (Tr. 75) Mr. Lord testified that all tenants, regardless of their lease type, are obligated to pay for all utilities, including water.[1] (Tr. 52) Since in most cases he has no written lease with his tenants, the utility arrangement is the result of an oral agreement between Mr. Lord and the tenant. Mr. Lord expects tenants to pay the Borough directly. (Tr. 84) The Borough contends, and the Lords do not dispute, that the Borough does not know the identity of the Lords' tenants, as the tenants have not filed applications for utility or water service with the Borough and Mr. Lord has not notified the Borough of the tenants' names. Thus, it was Mr. Lord who received the bills from the Borough. Mr. Lord believes that he is not responsible for advising the tenants of their utility charges, and refuses to collect utility charges from the tenants because he is not the Borough's "collection agent" and he does not "feel it to be [his] bill anyways." (Tr. at 89, 94).

The fact that Mr. Lord believes the bills are the responsibility of the tenants, combined with the lack of billing agreements between the Borough and the tenants, has resulted in delinquencies of $152,350.51 for unpaid water, sewer, and refuse service.

On August 11, 1995, the Lords filed joint petitions for bankruptcy under Chapter 13 of the United States Bankruptcy Code. On January 12, 1996, the Borough filed a proof of claim for the unpaid utility bills in the amount of $152,350.51. The Lords objected to the claim, but on June 18, 1996, the Bankruptcy Court ordered that it be allowed in full. The Lords then filed a motion for reconsideration on the issue of the water charges only ($65,122.64), claiming that liabil-

---

1. However, some multiple unit tenants pay only for heat because the bills for other utilities in the multi-unit buildings cannot be broken down into individual charges.

ity for unpaid water bills is limited to charges for the past ninety days under 53 P.S. § 306B(h.1). That motion was denied on September 17, 1996, and the Lords now appeal that denial to this court.

## II. Discussion

### A. Standard of Review

A district court, "in reviewing the decision of a bankruptcy court, must apply a clearly erroneous standard to findings of fact and exercise plenary review over conclusions of law." *Rosen v. Bezner,* 996 F.2d 1527, 1530 n. 2 (3d Cir.1993), *citing In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989). Mixed questions of law and fact should be broken down into their components and analyzed accordingly. *Sharon Steel,* 871 F.2d at 1222 (citations omitted).

### B. Pennsylvania Municipality Authorities Act

■ The heart of the Lords' appeal is their interpretation of 53 P.S. § 306B(h.1). Section 306B(h.1), enacted by the Pennsylvania Legislature on December 19, 1990, provides:

> In the case of an Authority which has agreed to provide water service through a separate meter and separate service line to a residential dwelling unit in which the owner does not reside, the owner shall be liable to pay the tenant's bill for service rendered to the tenant by the Authority only if the Authority notifies the owner and the tenant within thirty days after the bill first becomes overdue. Such notification shall be provided by first class mail to the address of the owner provided to the Authority by the owner and to the billing address of the tenant, respectively. Nothing herein shall be construed to require an Authority to terminate service to a tenant, provided that the owner shall not be liable for any service which the Authority provides to the tenant ninety or more days after the tenant's bill first becomes due unless the Authority has been prevented by court order from terminating service to that tenant.

The parties have not cited, nor has this court found, any cases or legislative history relating to this statute. Accordingly, this court must predict how the Pennsylvania Supreme Court would rule if presented with the issue. *See, e.g., Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 364 (3d Cir.1990).

In the instant case, the Bankruptcy Court found that "the Borough did not agree to supply water service to any of debtors' tenants (and never entered into an agreement to bill the tenants separately)." Bankruptcy Court Order Denying Reconsideration, September 17, 1996. The Lords do not dispute this finding, and the testimony of Mr. Fieck and Mr. Lord supports it. (Tr. 14–15, 21–22, 24–26, 55–56, 82, 87). Therefore, the finding is not clearly erroneous and it will stand.

Because there was no agreement between the Borough and the tenants to provide water service, I find that § 306B(h.1) does not protect the Lords from liability for the entire amount of the unpaid water bills. The statute only takes effect "[i]n the case of an Authority which has agreed" to provide services. There is nothing in the statute that expresses with whom the Authority must agree. The only logical reading, however, is that the Authority must have some sort of agreement *with the tenant* to provide water service. Otherwise, the subsequent references to the "tenant's bill" would be nonsensical. Without an agreement between the Authority and the tenant, the tenant would not receive his or her own bill, and without a "tenant's bill" the remainder of the statute is meaningless.

Furthermore, it would be unfair for a landlord to receive the benefit of limited liability for unpaid water bills, but to bear none of the burden of ensuring that the tenant and the Borough had an agreement. Mr. Lord, for example, could conceivably orally lease one of his premises to a number of different tenants within a period of time. If he did not inform the Borough as each tenant changed, or he did not arrange for each tenant to tell the Borough, the Borough would have no way to bill each tenant. Under the Lords' proposed interpretation of § 306B(h.1), however, Mr. Lord would not be liable for the water bills incurred by those tenants.

This interpretation of § 306B(h.1) does not require Mr. Lord and landlords like him to

become the Borough's "collection agents." It merely requires some minimal action on the part of landlords to ensure that the Borough is able to bill the tenant. For example, Mr. Lord could have paid up the bill between tenants, turned off the water, and insisted that each new tenant contract with the Borough for water service.[2] Then the tenant would have an agreement with the Borough, and, assuming the other provisions of the statute were met, Mr. Lord could legitimately be held liable only for the past ninety days' service.

## C. General Liability for Water Bills

 The Lords next argue that, regardless of § 306B(h.1), tenants, not owners, are responsible for water services.[3] This argument is incorrect as a matter of law. In Pennsylvania, a municipality may hold an owner personally liable for his or her tenant's delinquent water bills. *Skupien v. Borough of Gallitzin,* 134 Pa.Cmwlth. 115, 578 A.2d 577, 579 (1990). In addition, a municipality has a statutory right to enter a lien against property for unpaid utility bills, regardless of whether the owner or a tenant occupies the property, and any lien would be the responsibility of the owner. 53 P.S. § 7107. Property owners who are aware of water service on their property—whether they reside on that property or not—have an implied contract with the municipality and are obligated to pay the water bills. *City of Philadelphia v. Northwood Textile Mills, Inc.,* 395 Pa. 112, 149 A.2d 60, 62–63 (1959) (owner of rental property who is or should be aware of water service to the property is ultimately responsible for water bills unless he obtains the consent of the city to delegate his duty).

 The Lords argue, however, that because they never had a written agreement with the Borough for water service, they are not responsible for the water bills. This proposition is untenable. The Pennsylvania Supreme Court in *Northwood Textile* held that owners are ultimately responsible for utility bills; the court did not limit its holding to those landlords who have written agreements with the city. There is no reason why the Lords should be allowed to avoid liability because their obligation was not put into writing.

The Lords respond that the Borough's regulations only hold "consumers" responsible, and that "consumer" is defined as "the applicant who contracts for or uses the water." Department Rules and Regulations ("Regulations") §§ 101, 129. Because the Lords neither used the water nor filed a written application, they argue, they are not consumers and therefore are not responsible for the unpaid bills. This argument fails for three reasons. First, this court does not believe that the Borough's regulations were meant to negate the Borough's clear right to enter a lien against a property for unpaid bills. Under the Lords' interpretation of the Regulations, property owners who did not have written applications on file with the Borough would not be liable for water bills, so they theoretically would not be obligated to pay any liens entered against their property pursuant to 53 P.S. § 7107. Such an outcome could not have been intended by the Borough. Second, in a situation such as the Lords', where the owners never filed a written application for service and the Borough was not notified of the tenants' names and billing addresses, the Lords' interpretation of the Regulations would mean that the Borough could not feasibly collect payment for water charges from either the tenant or the owner. The Borough could not have intended their Regulations to be interpreted in this manner. Third, under *Northwood Textile* the Lords have an implied contract for water service with the Borough. The Regulations define "consumer" as one who "contracts for or uses the water," thus the Lords' implied contract makes them "consumers." Therefore they are responsible for the unpaid bills.

---

2. Under the Borough's current ordinances and policies, services can be switched into a new person's name only if the current charges for the property are paid.

3. Though both Appellants and Appellees state that the only issue on appeal to this court is the reach of 53 P.S. § 306B(h.1), Appellants include in their brief the argument that they, as owners, are not responsible for the unpaid bills of their tenants. Because the matter has been briefed by both parties, this court will address the issue.

For the above reasons, the Lords contention that owners are not liable for their tenants' bills is incorrect.

### III. Conclusion

For the reasons set forth above, the court affirms the September 17, 1996 Order of the Bankruptcy Court denying the Lords' motion for reconsideration and allowing in full the claim of the Borough of Pottstown for unpaid water charges in the amount of $65,122.64. An appropriate order follows.

### *ORDER*

AND NOW, this 28 day of January, 1997, upon consideration of the record and briefs filed by Appellants and Appellees in the above matter, it is hereby ORDERED that the decision of the Bankruptcy Court allowing in full the claim of the Borough of Pottstown for $65,122.64 in unpaid water charges is AFFIRMED.