The TOWNSHIP OF SUMMIT

v.

PROPERTY LOCATED AT VACANT LAND IN SUMMIT TOWNSHIP, Erie County, Erie County Tax Index No. (40) 16–72–41 and Emil F. Hessinger and Marian C. Hessinger (deceased).

Appeal of: Carl E. Hessinger, Fred W. Hessinger, Karen H. Zalewski (now deceased), Robert G. Hessinger, Cheryl L. Hessinger.

Commonwealth Court of Pennsylvania.

Argued April 22, 2014.
Decided May 23, 2014.

122

Evan E. Adair, Erie, for appellants.

Michael Musone, Erie, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This is an appeal from a ruling of the Erie County Court of Common Pleas (trial court) upholding the validity of a lien filed by the Township of Summit (Township) against a property (the Hessinger Property) that was owned at the time by Emil Hessinger, who is now deceased, and is presently owned by appellants Carl E. Hessinger, Fred W. Hessinger, Karen H. Zalewski (now deceased), Robert G. Hessinger, and Cheryl L. Hessinger (Owners). For the reasons set forth below, we reverse.

The lien at issue in this case arises out of an economic development project to bring an employer, Bush Industries, Inc. (Bush Industries), to the area. In 1995, Bush Industries sought to build a distribution and manufacturing facility on over 80 acres of land in the Township that it purchased from several property owners, including 11.3 acres that it purchased from Emil Hessinger on the northern border of the Hessinger Property. (Township Response to Affidavit of Defense New Matter ¶¶ 14–15, Reproduced Record (R.R.) at 35a; Owners Reply to Township New Matter ¶¶ 14–15, R.R. at 39a; Plot of Survey, Township Amended Summary Judgment Motion Ex. 2 (Plot of Survey); Bush Industries Land Development Plan, R.R. at 88a.) Richard Hessinger, Emil Hessinger's son, was one of three Township Supervisors at the time, and also had a power of attorney to act for Emil Hessinger in executing documents for the subdivision plan needed by Bush Industries for its facility. (Township Response to Affidavit of De-

fense New Matter ¶¶ 30–31, R.R. at 37a; Owners Reply to Township New Matter ¶¶ 30–31, R.R. at 42a.)

The proposed Bush Industries facility required access road construction and water and sewer line extensions costing over $2 million. These infrastructure improvements included construction of an extension of an existing road, Robison Road, on the northern border of the Bush Industries facility; construction of a new road, named Hessinger Drive by Bush Industries, from Robison Road south along the east side of the Bush Industries facility; and installation of water and sewer lines along those roads. (Township Grant Application, Township Amended Summary Judgment Motion Ex. 1; Plot of Survey; Affidavit of Bush Industries Surveyor Welka ¶ 12, R.R. at 147a.) The Township applied to the Commonwealth for funding and received a $2,162,394 Business Infrastructure Development (BID) grant from the Commonwealth for this project, which the Commonwealth later increased by $100,305 because of soil conditions. (Township Grant Application, R.R. at 158a; BID Grant Agreement, Township Amended Summary Judgment Motion Ex. 7; July 17, 1996 Letter from Commonwealth to Township, R.R. at 170a.) It was contemplated by the Township, Bush Industries and Emil Hessinger that the BID grant would cover the cost of all the infrastructure improvements. (Bush Industries Developer's Agreement ¶ G, R.R. at 101a; Bush Industries Letter to Emil Hessinger, R.R. at 149a.) Bush Industries represented to Emil Hessinger in its negotiations to purchase property from him that it was seeking state funding "to extend the sewer and water lines to the common boundary between the Bush property and your property." (Bush Industries Letter to Emil Hessinger, R.R. at 149a.)

The Township's Subdivision, Land Development and Mobile Home Park Ordinance (Land Development Ordinance) provides that dead-end streets must have a turn-around and that "[w]hen the subdivision or land development adjoins unsubdivided acreage, new streets shall be provided through to the boundary lines of the development." (Land Development Ordinance §§ 501.4, 501.12(B).) The subdivision plans originally submitted by Bush Industries showed the turn-around for Hessinger Drive entirely on the land to be acquired by Bush Industries and not abutting any other property, but the plans were changed to place the turn-around on the Hessinger Property. (Affidavit of Bush Industries Surveyor Welka ¶¶ 9–10, R.R. at 147a; Affidavit of Township Planner Sandberg ¶¶ 5–14 & attached Sketches of Turn–Around Location, R.R. at 227a–231a; Plot of Survey.) Richard Hessinger requested that the plans be changed to place the turn-around on the Hessinger Property adjoining the Bush Industries land. (Affidavit of Township Planner Sandberg ¶¶ 9–11 & attached Sketches of Turn–Around Location, R.R. at 228a, 230a–231a.) The plans ultimately adopted, however, moved the Hessinger Drive turn-around farther onto the Hessinger Property, not abutting the Bush Industries land. (Plot of Survey.) There is no evidence in the record as to why this additional change was made or who requested it.

In May 1995, a Plot of Survey for the Bush Industries subdivision plan was recorded that was signed by all of the landowners selling to Bush Industries. All of these sellers signed the following statement on the Plot of Survey:

KNOW ALL MEN BY THESE PRESENTS, that GREENFIELD INVESTMENT COMPANY, owners of this property, ... ALSO ROBERT W. & SHERYL A. HEIGES, owners of this property, ... ALSO PETER F. & GEORGETTE P. SCHELER, owners of this property, ... ALSO EMIL F. HESSINGER, owners of this property, ... do hereby dedicate forever for public use for highway purposes all roads, drives, avenues and other public highways shown on this plan with the same force and effect as if the same had been opened or taken through legal proceedings, and in consideration of the approval of this plan and the acceptance of said public highways by SUMMIT TOWNSHIP we hereby agree and covenant and do by these presents release and forever discharge the Supervisors of SUMMIT TOWNSHIP from any liability or damages arising from the appropriation of said ground for public highways.

And it does covenant and agree to install all necessary storm and sanitary sewers, water lines and paving of streets in said subdivision according to grades and specifications reviewed by the Township Engineer and to pay the necessary cost thereof as a condition of acceptance of this plan of subdivision and the streets laid out thereon and approved by the Supervisors of SUMMIT TOWNSHIP and that no obligations shall be incurred or assumed by SUMMIT TOWNSHIP until said storm and sanitary sewers, water lines and paving shall be approved and accepted by official action of SUMMIT TOWNSHIP. This dedication and release shall be binding upon my heirs, executors, administrators, assigns and purchasers of lots therein.

(Plot of Survey.) The Township, by the two Supervisors other than Richard Hessinger, approved the Plot of Survey on May 1, 1995. (*Id.*) Richard Hessinger signed that statement on the Plot of Survey on behalf of Emil Hessinger on May 11, 1995. (*Id.*) Between July 31, 1995 and June 1996, the Township constructed the

Robison Road and Hessinger Drive roadways and accompanying storm and sanitary sewers and water main contemplated in the approved Bush Industries plan. (Certificate of Completion, R.R. at 188a.) On September 16, 1996, the Township accepted and adopted Robison Road and Hessinger Drive as public roadways. (Township Resolution, R.R. at 189a–191a.)

On July 17, 1996, the Commonwealth notified the Township that the infrastructure improvements to the south of the Bush Industries property line were not covered by the BID grant and that it was reducing the grant by the amount allocable to those improvements, which it estimated to be $96,000. (July 17, 1996 Letter from Commonwealth to Township, R.R. at 170a–171a.) The Commonwealth did not find that the Township or any Township official committed any impropriety, and characterized the improvements beyond the Bush Industries property line as "made in order for the project to comply with the Township's ordinances and rules and regulations of the Township's sewer authority." (*Id.*, R.R. at 170a.) The Commonwealth, however, found that the Township did not submit the amended plans showing the off-site improvements with its grant application. (*Id.*) This was because the dealings with the Commonwealth, which was pushing for the Bush Industries facility, were well underway before the plans were complete and the Township Engineer did not update the Township's submissions. (Minutes of Township Supervisors October 10, 1996 Meeting, R.R. at 70a–71a.) At the Township's request, the Commonwealth reevaluated the amount of infrastructure south of the Bush Industries property line and lowered the reduction of the grant amount to $70,000. (*Id.*, R.R. at 60a.)

On October 10, 1996, at a special business meeting, the Township Supervisors voted by motion, with Richard Hessinger abstaining, to assess the $70,000 shortfall equally on the Hessinger Property and Greenfield Investment Company property that adjoined the Bush Industries land. (*Id.*, R.R. at 60a, 68a–72a.) The articulated basis for the assessment was that those two properties abutted the 261 feet of Hessinger Drive south of the Bush Industries property. (*Id.*, R.R. at 63a–64a, 66a–70a.) The minutes of the meeting do not refer to any promise or agreement by Emil Hessinger or Greenfield Investment Company to pay for any improvements. (*Id.*, R.R. at 60a–72a.) The Township did not assess the other two landowners who signed the Plot of Survey, the Heigeses and the Schelers.

On December 16, 1996, the Township filed a municipal lien against the Hessinger Property in the amount of $35,000 plus 6% interest from November 4, 1996 for sanitary sewer line improvements, public water line improvements, storm water drainage and road construction. (Municipal Lien, R.R. at 8a–13a.) The lien does not state what amount of the $35,000 assessment is attributable to the cost of the road and what amounts are attributable to the water and sewer lines, and there is no evidence in the record as to amounts assessed for the different improvements.

On July 10, 2006, Owners filed and served on the Township a notice to issue a writ of *scire facias* with respect to this 1996 lien. On July 24, 2006, the Township served a writ of *scire facias* seeking judgment against the Hessinger Property on the claim asserted in the lien. Owners filed an Affidavit of Defense on August 8, 2006, asserting that the Township's lien and claim were invalid because the requirements for assessments for public improvements under the Second Class Town-

ship Code [1] were not satisfied and because either Bush Industries or the Township was responsible for the cost.

In January 2012, after completion of discovery, the parties filed cross-motions for summary judgment. No evidence was submitted by either party as to the amount that Bush Industries paid Emil Hessinger for the 11.3 acres it bought from him, the assessed value of the Hessinger Property, the effect of the extension of Hessinger Drive and the water and sewer lines on the value of the Hessinger Property, or whether any other roads or utilities extended to other parts of the Hessinger Property. On August 9, 2012, the trial court granted the Township's summary judgment motion and denied Owners' summary judgment motion. The trial court did not find that the lien was imposed in accordance with statutory requirements for assessments, and upheld the lien solely on the grounds that the Plot of Survey language constituted a contract by Emil Hessinger to pay for improvements beyond the land that Bush Industries was purchasing or, alternatively, made him liable for such improvements by promissory estoppel. (Trial Court Op. at 8–9.) On December 12, 2013, following denial of a petition by the Township for attorneys' fees, the trial court entered judgment in favor of the Township in the amount of $35,000.00 plus interest and costs other than attorneys' fees.

On appeal to this Court,[2] Owners argue that the lien on the Hessinger Property is invalid because the Township did not comply with statutory requirements for assessments. There is no dispute that the $35,000 assessment on the Hessinger Property did not comply with the requirements of the Second Class Township Code. The Second Class Township Code permits assessment of the costs of roads on abutting property owners constructed pursuant to an ordinance enacted by the township supervisors. Sections 2304(a) and 2315 of the Second Class Township Code, 53 P.S. §§ 67304(a), 67315.[3] Prior to enacting the ordinance for construction of a new road, the township supervisors must give abutting property owners ten days' written notice in advance of the hearing on the ordinance. Sections 2305(a) of the Second Class Township Code, 53 P.S. § 67305(a). The Second Class Township Code further provides with respect to road improvements that "in no instance shall any abutting property owner be liable for the cost of improvements in an amount greater than fifteen percent of the assessed valuation of the abutting property," and that any costs above that 15% must be borne by the township. 53 P.S. § 67315(b). The Second Class Township Code permits assessment of the cost of sanitary sewers on abutting properties, Section 2508 of the

1. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.

2. Our standard of review of the trial court's grant of summary judgment is *de novo* and the scope of review is plenary. *Pyeritz v. Commonwealth,* 613 Pa. 80, 32 A.3d 687, 692 (2011).

3. The Second Class Township Code was amended by the Act of November 9, 1995, P.L. 350 (1995 Act), effective May 8, 1996, after the approval and most of the construction of the improvements here, but before the Township's assessment on the Hessinger Property. The 1995 Act renumbered the provisions concerning authorization and assessments for roads, sewers and water lines. Prior to the 1995 Act, the requirements of Sections 2304(a), 2305(a), 2503, and 2508 discussed herein were set forth in Sections 1101, 1102(a), 1502 and 1509 of the Second Class Township Code. *See former* 53 P.S. §§ 66101, 66102(a), 66502, 66509 (1995); 1995 Pa. Legis. Serv. Act 1995–60 (H.B. 702). Section 2315, added by the 1995 Act, is applicable here because it was in effect prior to the assessment on the Hessinger Property.

Second Class Township Code, 53 P.S. § 67508, but provides that no such sewer shall be constructed unless the board of supervisors' authorization of the construction is published in a newspaper of general circulation once a week for three successive weeks. Section 2503 of the Second Class Township Code, 53 P.S. § 67503. No ordinance was enacted by the Township for the construction here, and there was no notice of hearing or publication of a Township ordinance or resolution authorizing the improvements. (Township Answers to Interrogatories and Document Requests (First Set), Answer to Interrogatories Nos. 2, 17, 18, Owners Summary Judgment Motion Ex. 34.) In addition, there is no evidence that the assessment on the Hessinger Property meets the substantive limitation on road assessments of 15% of the property's assessed valuation.

The Township argues that these statutory requirements do not apply because its claim is based on contract and promissory estoppel, rather than its statutory assessment powers, and that its lien is valid under the statute commonly known as the Municipal Claims Act of 1923 (Municipal Claims Act) [4] without compliance with assessment requirements because it is a "municipal claim." We do not agree.

 The issue here is not whether the Township can recover the costs of an improvement by bringing an action based on contract or estoppel, but whether such a claim, without compliance with statutory assessment requirements, creates a lien by operation of law. Section 3 of the Municipal Claims Act provides, and provided in 1996 when this lien was filed, that "[a]ll municipal claims . . . *lawfully imposed or assessed* on any property in this Commonwealth . . . shall be and they are hereby declared to be a lien on said property." 53

P.S. § 7106(a) (emphasis added). "A municipal lien arises by operation of law whenever a municipal claim is lawfully assessed or imposed upon the property." *North Coventry Township v. Tripodi,* 64 A.3d 1128, 1132 (Pa.Cmwlth.2013).

The Township's claim is a "municipal claim" under the Municipal Claims Act because it seeks to recover costs of road, sewer and water line construction. Section 1 of the Municipal Claims Act, 53 P.S. § 7101. The Municipal Claims Act, however, also requires that the claim be "lawfully imposed or assessed." 53 P.S. § 7106(a); *see also North Coventry Township,* 64 A.3d at 1132. A claim based on contract or promissory estoppel, rather than statutory authority, does not satisfy that latter requirement.

 While the Municipal Claims Act does not define the terms "lawful," "lawfully," "impose" or "assess," the ordinary legal meaning of "impose" and "assess" requires a creation by government action, and does not encompass a voluntary agreement or promise to pay. *Black's Law Dictionary* 116, 755 (6th Ed. 1990) (defining "impose" as "[t]o levy or exact as by authority; to lay as a burden, tax, duty or charge," and "assess" as "to impose a pecuniary payment upon persons or property"). Municipal liens "do not rest on any agreement or specific assent of the owner of the land charged with the burden." *In re Scranton Sewer,* 213 Pa. 4, 62 A. 173, 174 (1905); *Spring Garden Township v. Logan,* 149 Pa.Super. 580, 27 A.2d 419, 421 (1942) (quoting *Scranton Sewer* and holding lien under Municipal Claims Act invalid for noncompliance with assessment requirements). Absent compliance with statutory requirements for assessment, the Municipal Claims Act's requirement that the municipal claim must be "lawfully im-

---

4. Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§ 7101–7505.

posed or assessed" on the property therefore is not satisfied and the claim cannot become a lien on the property by operation of law, regardless of whether the municipality has a valid cause of action for that claim. Because the Township did not comply with the requirements of the Second Class Township Code for assessments, its lien against the Hessinger Property is invalid.

■ Moreover, even if a lien could be created by contract or estoppel, the trial court erred in holding that the Plot of Survey imposed an obligation on Emil Hessinger to pay for the improvements in question.[5] The Township's and trial court's edited quotations of the language on the Plot of Survey do not accurately represent its contents as a whole. Read in its entirety, the Plot of Survey language, which characterizes itself as a "dedication and release," is essentially a dedication of improvements to public use and release of liability of the Township with respect to all of the improvements contemplated in the Bush Industries plans by all four parties who owned the land being subdivided and sold to Bush Industries (Plot of Survey), and is neither an agreement by the two parties upon whom the Township imposed liens to pay for improvements nor an agreement concerning "the cost of constructing improvements on land beyond the Bush Industries property." (Trial Court Op. at 8.) The language on the Plot of Survey does *not* reference land not being acquired by Bush Industries as the subject of any special or additional obligations. Rather, it refers to dedication of improvements "shown on this plan" and

installation and payment for improvements "in said subdivision" (Plot of Survey), and therefore plainly includes improvements on the Bush Industries land in any obligations it imposes.

While the second paragraph of the Plot of Survey language does reference an agreement to pay for improvements, it does not show any agreement by any of the signers to pay for the cost of the improvements at issue here. Unlike the first paragraph, which identifies the sellers by name and unambiguously expresses that they dedicate the roads on the plan to public use and that they release the Township from liability in appropriating that land to public use, the second paragraph does not identify the party making the agreement. Instead, it states only that "*it does covenant and agree to install* all necessary storm and sanitary sewers, water lines and paving of streets in said subdivision . . . and to pay sanitary sewers, water lines and paving of streets in said subdivision . . . and to pay the necessary costs thereof." (Plot of Survey) (emphasis added). Use of "*it*" appears to *refer to a third* party, such as Bush Industries, as the Plot of Survey refers to the signers by the pronouns "we," "my," and "I." Moreover, reading "it" to mean that the signers contractually bound themselves to those commitments would have two absurd results: 1) it would make the Plot of Survey an agreement by the sellers to install the improvements, which was not the case; and 2) it would read the Plot of Survey as imposing the more than two million dollar cost of the improvements for Bush Industries on parties who were merely selling

---

**5.** The Township's argument that Owners failed to raise this issue in their Pa.R.A.P. 1925(b) statement of errors complained of on appeal is without merit. Owners' Statement of *Matters Complained of on Appeal* specifically asserted that the trial court erred in holding that the Plot of Survey obligated the

sellers who signed it to pay for the improvements. (Owners' Statement of Matters Complained of on Appeal ¶ 2.) Owners therefore did not waive the issue of whether the trial court erred in holding that the Plot of Survey made Emil Hessinger liable for the improvements on the bases of contract and estoppel.

land to Bush Industries for unidentified amounts.

In addition, the portion of the Plot of Survey setting forth the covenant and agreement to pay, unlike the dedication, relates only to the improvements *"in said subdivision,"* not to all improvements shown on the plan or depicted on the Plot of Survey. (Plot of Survey) (emphasis added). The "subdivision" is the area fully outlined and divided into lots on the Plot of Survey, not the land outside those boundaries, which is designated as "residue" or property of others. In the meeting where they voted the assessment against the Hessinger Property, the Township supervisors described the "subdivision" as the lots set forth on the Plot of Survey and as consisting only of the land that was being sold to Bush Industries and land that remained owned by Greenfield Investment Company. (Minutes of Township Supervisors October 10, 1996 Meeting, R.R. at 68a.) The area fully outlined on the Plot of Survey and divided into lots does *not* include the Hessinger Property, which is referred to as "Residue of the Land of Emil F. Hessinger." (Plot of Survey.) The Plot of Survey therefore does not set forth any agreement to pay for the extension of Hessinger Drive on the Hessinger Property or any other improvements on the Hessinger Property and cannot constitute a contract by Emil Hessinger to pay for the improvements that are the basis of the Township's lien.

 The Township's claim that it can recover the cost of these improvements on a theory of promissory estoppel likewise fails. To prove a cause of action for promissory estoppel, the plaintiff must show 1) that the defendant made a promise that he should have reasonably expected to induce action or forbearance by the plaintiff; 2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise. *Crouse v. Cyclops Industries,* 560 Pa. 394, 745 A.2d 606, 610 (2000); *Peluso v. Kistner,* 970 A.2d 530, 533 (Pa.Cmwlth.2009). Those elements cannot be shown here. The trial court's conclusion that the Plot of Survey was a promise to pay for the improvements on the Hessinger Property fails for the same reasons as its contract holding: as discussed above, the actual language of the Plot of Survey does not contain any promise by Emil Hessinger to pay for improvements or a promise by anyone to pay for improvements outside the Bush Industries land and other subdivided land.

 Nor is there any basis upon which reliance could be found. The Township voted to approve the subdivision plan on April 3, 1995 and approved the Plot of Survey on May 1, 1995, before Richard Hessinger signed the Plot of Survey language in question for Emil Hessinger on May 11, 1995. (Minutes of Township Supervisors April 3, 1995 Meeting, R.R. at 121a; Plot of Survey.) Indeed, the Township at the time of the assessment and lien did not express any belief that it had been led to extend the improvements into the Hessinger Property by any promise to pay or that it relied on any language of the Plot of Survey as a source of funding for any part of the improvements. (Minutes of Township Supervisors October 10, 1996 Meeting, R.R. at 60a–72a.)

Because the Township's lien against the Hessinger Property is invalid as a matter of law, we reverse the trial court's order of August 9, 2012 granting the Township summary judgment and denying Owners' motion for summary judgment and its order of December 12, 2013 entering judgment on the lien.

### *ORDER*

AND NOW, this 23rd day of May, 2014, the orders of August 9, 2012 and December 12, 2013 of the Erie County Court of Common Pleas in the above-captioned matter are REVERSED, and this matter is REMANDED to the Erie County Court of Common Pleas for entry of summary judgment in favor of Carl E. Hessinger, Fred W. Hessinger, Karen H. Zalewski (now deceased), Robert G. Hessinger, and Cheryl L. Hessinger.

Jurisdiction relinquished.