IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Ellwood City,                    :
Lawrence County, Pennsylvania,              :
        Appellant                   :
                                         :  No.  985 C.D. 2016
       v.                          :
                                         :  Argued:  April 6, 2017
Heraeus Electro-Nite Co., LLC               :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE McCULLOUGH                       FILED:  July 25, 2017


The Borough of Ellwood City (Borough) appeals from a decision of the Court of Common Pleas of Lawrence County (trial court) granting a motion for judgment on the pleadings filed by Heraeus Electro-Nite Co., LLC (Heraeus).  Upon review, we affirm.


**Facts and Procedural History**

Pursuant to its codified ordinance concerning the sale of electric energy and power,  the Borough is owner and operator of an independent electrical power system that provides electricity within its municipal town limits.   Municipal supplying of electricity and electric service is authorized by sections 24A02 and 24A03 of the Borough Code, 8 Pa.C.S. §§24A02, 24A03.  The Borough adopted an ordinance codified and designed to regulate the operation and sale of electricity and electric service within its boundaries.  (Reproduced Record (R.R.) at 64-66.)

Heraeus operated a plant within the Borough's town limits and was an eighteen-year industrial customer of the electric utility. On an unspecified date, lightning struck one of the Borough's metering current transformers, rendering it inoperable. When the Borough sent a crew to repair the metering current transformer, the crew discovered problems with the meters which supposedly caused Heraeus to have been underbilled for electricity and electric service for seventeen years. (Borough's Reply to New Matter, ¶¶33, 38-40; R.R. at 71, 73.)

At some point in 2014, the Borough approached Heraeus about the alleged underbilling based upon the problems with the meters. In October through December of 2014, the Borough and Heraeus met and discussed the accuracy of the Borough's billing. (Heraeus' New Matter at ¶¶21-35 and Borough's Reply to New Matter, ¶14; R.R. at 23-27, 68-69.)

On January 20, 2015, the Borough filed a "Municipal Claim for Assessment of Charges for Municipal Services Rendered [*sic*]," requesting a municipal lien against Heraeus in the sum of $975,456.52. A judgment in the nature of a municipal lien for this amount was entered that same date. (R.R. at 4-9.) The lien alleged, "The Borough of Ellwood City supplied municipal services, namely electricity, to the within property of the Defendant Owner from October 2010 through September 2014." (R.R. at 6.)

The Borough claimed that there was "a huge error" in calculating what Heraeus owed the Borough for electricity and electric service, alleging it billed Heraeus for only about twenty percent of what was actually supplied. (Borough's Reply to New Matter, ¶¶19, 33; R.R. at 69, 71.) The Borough admitted that Heraeus had paid the Borough's monthly electric bills from September 1997, through September 2014, and further noted that "Heraeus voluntarily executed a 'Request for

Electrical Service' in November 1996, which was accepted by the [B]orough." (Borough's Answers to Requests for Admission, Nos. 7 and 3, respectively; R.R. at 148-49.) The Borough also confirmed its own codified ordinance required a "written application accepted by the Borough, or other form of contract" before "electricity may be supplied to a customer." (Borough's Answers to Requests for Admission, Nos. 2-3; R.R. at 148.)

On February 3, 2015, Heraeus filed a notice to issue writ of *scire facias*. On February 11, 2015, the Borough issued the writ, and Heraeus filed its affidavit of defense, answer, new matter, and counterclaim on February 27, 2015. Heraeus' counterclaim was a request for declaratory judgment. The Borough filed a reply to new matter and counterclaim on March 19, 2015. Heraeus also conducted limited discovery, including a request for admissions served on the Borough.

After receiving the response to its request for admissions, Heraeus filed a motion for judgment on the pleadings, alleging that entry of the municipal lien was improper because the Borough's ordinance does not permit it to "back-bill," that is, to bill for prior undercharges for the electricity and electric service provided to Heraeus. The Borough argued that the municipal lien was appropriate because it had "made a huge error" in calculating the electricity used by Heraeus. The Borough also moved to amend its lien to reflect additional calculations of its lien, raising the total amount of the lien to $1,327,179.48. (R.R. at 251-52.)

On May 18, 2015, the trial court issued an opinion and order granting Heraeus' motion for judgment on the pleadings on two grounds: (1) the Borough's own ordinance precludes it from back-billing, and (2) "the lien here should be struck also because the Borough did not lawfully impose the lien on the property initially

3

since imposition of the lien was based upon an agreement."[1] (Trial court op. at 8-10.) Because the trial court struck Borough's municipal claims, it did not reach Borough's motion to amend its lien.

On appeal to this Court,[2] Borough makes two arguments: (1) the trial court erred in determining that Borough's ordinances precluded back-billing, and, (2) the trial court erred in determining that a municipal lien may not be imposed because the basis of the lien was statutory and not contractual.[3]

---

[1] Although the trial court addressed Pennsylvania utility regulations in passing, neither party cited these regulations in their briefs or oral arguments. (Trial court op. at 6.) These regulations discuss how the Commonwealth regulates "Previously Unbilled Utility Service." 52 Pa. Code §52.264.

[2] "The standard of review of a grant of a motion for judgment on the pleadings is limited" and the judgment will be affirmed "where, on the facts averred, the law says with certainty that no recovery is possible." *In Re Weidner*, 938 A.2d 354, 358 (Pa. 2006). The scope of review is plenary. *Id.*

[3] Heraeus impliedly seeks to dismiss the appeal on the basis of a defective brief. (Heraeus' brief at 13 n.5.) It never formally moved to quash Borough's appeal but noted that Borough's brief included no citations or references to the reproduced record it filed. When Borough filed its first brief, it was rejected by this Court for failure to comply with Pa. R.A.P. 124(a)(4). Borough filed a second brief, and Heraeus challenges the Borough's second brief, which is difficult to follow because of the frequently opaque references to parts of the reproduced record (with no specific references and no page numbers) along with some representations outside the record altogether. The case cited by Heraeus, however, involved even more serious and more pervasive violations on the requirements for a brief under Pa. R.A.P. 2101. *Kochan v. Department of Transportation, Bureau of Driver Licensing*, 768 A.2d 1186, 1188 (Pa. Cmwlth. 2001). Accordingly, this Court declines to quash or dismiss the Borough's appeal on these grounds.

4

## Discussion

### Borough's Attempt at Back-Billing

Section 24A02(d) of the Borough Code specifically provides, "No person, partnership or corporation may introduce electric current for light, heat, or power purposes, without the consent of the [borough] council, into the limits of any borough that is furnishing electric current to its inhabitants." 8 Pa.C.S. §24A02(d). In other words, if a municipality provides the electrical utility service within its boundaries, it is either the exclusive provider of electric service or has the only authority to approve such. A municipality such as the Borough may then enact its own ordinance to regulate the provision of electric service to its inhabitants and businesses.

The Borough urges this Court to construe its own ordinance the same way Pennsylvania courts interpret statutes enacted by the legislature, citing *Mann v. Lower Makefield, Ltd.*, 634 A.2d 768 (Pa. Cmwlth. 1993). The Borough argues that its ordinance would effect an absurd result if the Borough is not allowed to rectify under-billing an industrial consumer by eighty percent. In *Mann*, this Court affirmed the striking of a condition to a special exception granted by a zoning hearing board because the condition would have contravened the residential nature of the neighborhood. Citing the Statutory Construction Act (Act), this Court concluded that "[a]n ordinance, like a statute, must be construed, if possible, to give effect to all its provisions" [alluding to 1 Pa.C.S. §1921(a)] and, "[i]nterpretation of an ordinance which produces an absurd result is contrary to the rules of statutory construction," specifically citing section 1922(1) of the Act, dealing with presumptions. 1 Pa.C.S. §1922(1). *Mann*, 634 A.2d at 771-72. *See also Township of Marple v. Lynam*, 30 A.2d 208, 209 (Pa. Super. 1943).

5

Section 1921(b) of the Act also provides, "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). That rule of statutory construction was applied to interpretation of local ordinances by this Court in *Lucia v. Zoning Hearing Board of Upper St. Clair Township*, 437 A.2d 1294, 1295 (Pa. Cmwlth. 1981). There, the landowner requested an extension of his conditional use permit, and, when that was denied, he appealed. The trial court affirmed, as did this Court, applying the Act to local ordinances and holding that the board "could not prevent the automatic expiration of the permit." *Id.*

There are two provisions of the Borough ordinance at issue here. First, section 1046.02(a), which addresses the requirements for providing service, states:

> Written Application or Contract Required. *A written application accepted by the Borough*, or other form of contract, as well as a copy of the deed showing ownership of the property, will be required from each new customer before electric service is supplied, setting the conditions under which service is to be supplied and subjecting the customer to the Borough's rules and regulations. This shall apply whether the supply of service involves a new installation, the re-establishment of service which has been previously, a change in the class of service or a change in the customer's name. The Borough may, where unusual circumstances prevail and as a convenience to the customer, institute service pending the formal application [Emphasis supplied].

(R.R. at 247.)

The second pertinent provision, section 1046.43(b), addresses billing and states as follows:

> Billing Changes. Where, as a result of an investigation made at a customer's request, or by routine inspection,

6

demands are reassessed or redetermined, or a power factor is recomputed or remeasured, or the customer is found to be on an improper rate, *the change of billing* to the new demand or power factor, or to the proper rate, *will apply to the bill for the month during which the investigation is made and each month thereafter* [Emphasis supplied].

(R.R. at 224.)

Section 1046.02(a) states that a written application is required "from each new customer before electric service is to be supplied . . . ." ( R.R. at 247.) Such a written application was the basis for the start and continuation of utility service to Heraeus through the time in dispute, September of 2014. Hence, it is clear that any electricity or electric service provided to Heraeus by the Borough was the result of "[a] written application" for service that was "accepted by the Borough." (Section 1046.02(a) of the Ordinance; R.R. at 247.)

Section 1046.43(b) of the Borough's ordinance specifically provides that "the change of billing to. . . the proper rate, will apply to the bill for the month during which the investigation is made and each month thereafter." (R.R. at 224.) According to the Borough's ordinance, only current and future adjustments to a customer's electricity bill due to a billing error are permitted. The trial court's analysis on this issue was sound:

> It is clear that [Heraeus] took part in no wrongdoing in the billing of charges. Rather, [Heraeus] timely made electric bill payments to the Borough as [Heraeus] was billed . . . . Now, the Borough is attempting to, however one may define it, reassess, remeasure or redetermine either demand, power factors, rates, meter multipliers, transformer ratios and/or metering potential. In any regard, the Court can only conclude that in essence, the Borough is attempting to make a change in billing.

(Trial court op. at 7-8.)

7

The trial court held that section 1046.43(b) is clear and free from ambiguity; it allows prospective changes only, not retroactive changes, which means no back-billing for the amounts allegedly under-billed by the Borough for the four years in question. Specifically, the trial court held:

> [T]he Court does not accept the Borough's position that Section 1046.43 of the Ellwood City Ordinances applies only to billing changes, not billing errors. It is clear that the Defendant took part in no wrongdoing in the billing of charges. Rather, the Defendant timely made electric bill payments to the Borough as the Defendant was billed . . Now, the Borough is attempting to, however one may define it, reassess, remeasure or redetermine either demand, power factors, rates, meter multipliers, transformer ratios and/or metering potential. In any regard, the Court can only conclude that in essence, the Borough is attempting to make a change in billing.

(Trial court op. at 7-8.)

Heraeus argues that the opinion of the trial court reflected a plain reading of section 1046.43(b) of the ordinance. We agree. As the trial court concluded, "the Borough is attempting to make a change in billing. As a result, application of section 1046.43(b) of the Ellwood City Ordinance is triggered. The section clearly does not permit the Borough to change a past bill and back-bill for it." (Trial court op. at 8.) The mandate of this section of the ordinance is clear: any "change in billing . . . will apply to the bill for the month during which the investigation is made and each month thereafter." (R.R. at 224.)

The trial court properly applied the Borough's ordinance in denying it any relief as a matter of law.

**Contractual Nature of Relationship Between Borough and Heraeus**

8

The Borough argues that the trial court erred in striking its municipal lien on the basis that there existed a contractual relationship between the parties when in fact the basis for the provider-customer relationship here is statutory rather than contractual. In other words, the Borough states that when Heraeus established a business within the Borough, it was required by statute to use the electric energy the Borough supplied and there was no voluntary agreement between the parties. The Borough cites section 24A02 of the Borough Code, which, as noted above, specifically authorizes a borough to supply electric power and which further provides, in pertinent part, that:

> (d) Consent of borough to supply electricity. - No person, partnership or corporation may introduce electric current for light, heat or power purposes, without the consent of the council, into the limits of any borough that is furnishing electric current to its inhabitants.

8 Pa.C.S. §24A02(d).

The trial court rejected the Borough's argument in this regard, concluding that the lien was not lawfully imposed under section 3(a)(1) of the Municipal Claims and Tax Liens Act (Municipal Claims Act).[4] Section 3(a)(1) provides authorization for liens on property within a municipality for "[a]ll municipal claims, municipal liens, taxes, tax claims and tax liens which may hereafter be *lawfully imposed or assessed* on any property in this Commonwealth . . . ." 53 P.S. §7106(a)(1) (emphasis added). The trial court also relied on this Court's decision in *Township of Summit v. Property Located at Vacant Land in Summit Township*, 92 A.3d 121 (Pa. Cmwlth. 2014) (*Summit*), for support.

---

[4] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §7106(a)(1).

9

In *Summit*, a township sought to impose a lien against property for a portion of the cost of sanitary sewer line improvements, public water line improvements, storm water drainage, and road construction. The township and the owners had previously executed a "Plot of Survey" laying out the properties in question and obligations of the parties for the development. *Id.* at 124. Although this Court did not find that the Plot of Survey amounted to a contractual obligation among the parties but simply confirmed a dedication of land, we rejected the authority of a municipality to impose a municipal lien based on a contractual relationship between the local government and the other party. *Id.* at 128-29. In reviewing the Municipal Claims Act, this Court stated that the prerequisite for a municipal lien is a unilateral "government action, and does not encompass a voluntary agreement or promise to pay." *Id.* at 127 (citing section 3(a) of the Municipal Claims Act). We held that municipal liens "do not rest on any agreement or specific assent of the owner of the land charged with the burden." *Id.* (citing *In re Scranton Sewer*, 62 A. 173, 174 (Pa. 1905)).

In other words, according to this Court in *Summit*, the Municipal Claims Act requires "that the municipal claim must be 'lawfully imposed or assessed' on the property," and that a contractual dispute, by its very nature, "cannot become a lien on the property by operation of law, regardless of whether the municipality has a valid cause of action for that claim." *Summit*, 92 A.3d at 127-28; *see also* section 3(a)(1) of the Municipal Claims Act. Accordingly, under the reasoning in *Summit*, a municipal lien that is premised on a contractual arrangement is precluded.

The Borough argues that the trial court's reliance on *Summit* is misplaced because that case is distinguishable from the present matter. Specifically, the Borough argues, "[i]n *Summit*, the property owners were denied a necessary

10

notice which would have allowed an appeal process. Here, the Appellee was assessed a lien for electricity that it used, was not charged for, and did not pay." (Borough's brief at 22.) The Borough notes that Pennsylvania appellate courts have consistently held that a municipality has a statutory right to enter a lien against properties for unpaid utilities and that such liens are authorized by the Municipal Claims Act. (Borough's brief at 22.)

The Borough relies on two cases for support, *City of Philadelphia v. Northwest Textile Mills, Inc.*, 149 A.2d 60 (Pa. 1959), and *Lord v. Borough of Pottstown*, 205 B.R. 48 (Bankr. E.D. Pa. 1997). However, these cases are inapposite, as both cases involved liens for currently delinquent water bills, and did not involve the type of lien at issue here that was based on contractual provisions and effectively resulted in back-billing or a recalculation of prior billing.

In *Northwest Textile Mills*, the city proceeded against a property owner and landlord after it had reached an agreement with the tenants. The city entered a lien, and the property owner required the city to issue an amended writ of *scire facias*, to which the property owners filed an affidavit of defense and a counterclaim. The city filed a motion for judgment along with preliminary objections, both of which were granted by the trial court. On direct appeal to our Supreme Court, it upheld a statutory lien for currently delinquent water and sewer rents. The Court rejected the property owner's argument, and affirmed the lien.

In *Lord*, the owners were chapter 13 debtors who owned between 45 and 50 low-income residential rental units. The borough filed a proof of claim for unpaid water utility bills (not any municipal or other statutory lien). The debtors objected to the claim but the bankruptcy court allowed the claim in full. The debtors filed a

motion for reconsideration, which was denied. On appeal to the district court, it affirmed the liability of the debtor for the unpaid current water charges.

Heraeus is not disputing the general right of a municipality to apply a lien for unpaid utility bills; rather, it contests the right to enter a lien when the basis of legal liability is contractual and, hence, is not "lawfully imposed or assessed." *Summit*, 92 A.3d at 127-28. Heraeus responds further that the "Borough fails to cite *even a single decision* — either state or federal *from any jurisdiction* — in which a dispute over *electricity* bills was held to be a valid basis for a municipal lien." (Heraeus' brief at 25-26) (emphasis in original).

To the contrary, Heraeus contends that the dispute here arose from a contract that it voluntarily entered into with the Borough and, hence, the trial court's reliance on *Summit* was proper. Indeed, Heraeus cites our statement in *Summit* that "[a] claim based on contract or promissory estoppel, rather than statutory authority, does not satisfy [section 3(a)(1) of the Municipal Claims Act]." 92 A.3d at 127. Heraeus also points out that the Borough admitted in a response to its requests for admission that the Borough's "demand to Heraeus for payment of alleged electricity undercharges arises from a *contractual arrangement* between the parties for the supply of electricity." (R.R. at 240)(emphasis added). Further, Heraeus notes that section 1046.02(a) of the Borough's ordinance provides additional support for a finding of a contractual relationship between the parties, wherein it states that "[a] written application accepted by the Borough, *or other form of contract* . . . will be required from each new customer before electric service is supplied, *setting the conditions under which service is to be supplied* and subjecting the customer to the Borough's rules and regulations." (Heraeus' brief at 23)(emphasis in original).

12

Contrary to the Borough's argument, the lien in this case was not imposed based upon any statutory authority. Rather, the record supports the trial court's finding that the lien was imposed based upon an agreement/contract between the parties. As a result, we agree with the trial court and Heraeus that the lien was not lawfully imposed under section 3(a)(1) of the Municipal Claims Act and, hence, the trial court's reliance on *Summit* was proper.

## Conclusion

Based on the above, the trial court found that back-billing was not allowed by the Borough's ordinances and further, that the lien was based upon an agreement with the Borough, contrary to the Municipal Claims Act as amplified in *Summit*. We discern no error on the part of the trial court in granting Heraeus' motion for judgment on the pleadings and striking the lien, as there is no evidence, admission, or other matter of record allowing imposition of a municipal lien for back-billing or for any other claim based upon any contractual understanding.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Ellwood City,        :
Lawrence County, Pennsylvania,   :
            Appellant    :
                    :  No.  985 C.D. 2016
          v.        :
                    :
Heraeus Electro-Nite Co., LLC   :

## ***ORDER***

AND NOW, this 25th day of July, 2017, the order of the Court of Common Pleas of Lawrence County dated May 18, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge